STATE OF CONNECTICUT *v.* GERALD JENNINGS
(14049)
(14050)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 4—decision released December 11, 1990

*A. Paul Spinella,* with whom was *Susan V. Tirrel,* certified legal intern, for the appellant in both cases (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee in both cases (state).

HULL, J. The defendant, Gerald Jennings, was charged by substitute information with assault in the first degree in violation of General Statutes

§ 53a-59 (a) (1)[1] and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A)[2] as a result of an incident that occurred on June 6, 1987. In another case, the defendant was charged by substitute information with criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49[3] and 53a-59 (a) (1) and criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1)[4] as a result of incidents that occurred on February 19 and 27, 1987. The two informations were joined for trial pursuant to General Statutes § 54-57 and Practice Book § 829.[5]

[1] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-92 provides in pertinent part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[3] General Statutes § 53a-49 provides in pertinent part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] General Statutes § 53a-107 provides in pertinent part: "(a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . ."

[5] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

Practice Book § 829 provides: "The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

Following a jury trial, the defendant was found guilty, in the first case, of the lesser included offenses of assault in the second degree and kidnapping in the second degree. In the second case, he was found guilty as charged. The trial court thereupon sentenced the defendant to two concurrent five year terms of imprisonment in the first case and, in the second case, to concurrent terms of imprisonment of twelve years, execution suspended after seven years with five years probation and one year probation respectively, to run consecutively with the sentence imposed in the first case. The defendant appealed the judgments to the Appellate Court. We subsequently transferred the appeals to this court pursuant to Practice Book § 4023.

On appeal the defendant claims that the trial court violated his constitutional rights when it: (1) denied the defendant's motion to permit the withdrawal of appointed defense counsel; (2) granted the state's motion to join the two informations for trial; (3) denied the defendant's request to instruct the jury that it must be unanimous in its verdict as to factual theory; and (4) denied the jury's request for a written copy of portions of the jury instructions. We conclude that the defendant's constitutional rights were not violated. Accordingly, we affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On February 19, 1987, Patricia Hoskie, the victim, a former girlfriend of the defendant, was approached by the defendant while walking with her niece, Ruth Hoskie, to a bus stop in New Haven. The defendant asked to speak with the victim, but she refused. In response, the defendant revealed a knife under his coat. Shortly thereafter, the defendant, the victim and Ruth boarded a bus. The three got off the bus in Westville and started walking to her home. The victim continued to refuse the defendant's repeated requests to speak

with her. Upon arriving at her home, Ruth informed the defendant that he could not come inside. When he asked to use the telephone, however, Ruth's boyfriend, Yule Watley, permitted the defendant to enter for that purpose. The defendant proceeded to use the telephone, but he suddenly dropped the receiver, drew a knife and cut the victim's finger. Watley grasped the defendant but he broke free and cut the victim's upper arm. Watley intervened again, and this time he was able to gain possession of the knife. Watley threw the defendant out of the house.

The defendant and the victim briefly resumed their former relationship. Subsequently, though, while the victim was staying in the hospital for unrelated kidney treatment, she requested that the defendant be prohibited from visiting her. Hospital security informed the defendant of the victim's request, but on February 27, 1987, he attempted to visit her. Hospital security notified the police.

The relationship between the victim and the defendant resumed once again for a short period. On June 6, 1987, the victim went to Atlantic City, New Jersey, with her sister, Frances Johnson, and her friend, Alice Walker. Upon their return that same evening, a bus let the three women off in a parking lot behind the Elk's club in New Haven where Johnson's car was parked. As they walked toward the car, the defendant approached the victim and asked to speak with her. She agreed and the two spoke briefly. Thereafter, as Johnson walked with the victim to the car, the defendant followed. When they reached the car, Johnson pushed the victim inside it and started to close the door, but the defendant pulled it open and fell upon the victim. The defendant cut the victim's neck with a box cutter, pulled her out of the car, punched and kicked her and threw her about the parking lot. The victim

resisted the defendant and he cut her again, this time on the shoulder. Johnson and Walker tried to intervene, but the defendant threatened to shoot them with a shiny object that he displayed. The defendant took the victim from the parking lot to an empty apartment nearby. When a police officer walked by the apartment, the defendant instructed the victim to refrain from speaking. Some time later, the defendant told the victim that she could leave, which she did.

## I

The defendant's first claim is that the trial court's denial of his motion to permit withdrawal of defense counsel on grounds of a conflict of interest deprived him of his rights to the effective assistance of counsel, due process of law and a fair trial guaranteed by the sixth, fifth and fourteenth[6] amendments to the United States constitution and article first, § 8, of the Connecticut constitution.[7] We do not agree.

On October 28, 1987, prior to the commencement of trial, the defendant moved for the appointment of a special public defender to replace defense counsel, a public defender previously appointed for him, or in the alternative, for a continuance in order to obtain a private attorney. Defense counsel argued that since another public defender in her office had represented

---

[6] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

The fifth amendment to the Unites States constitution provides in pertinent part: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."

The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[7] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

the victim in a prior unrelated case, she owed the victim a duty of confidentiality that placed her in a position of conflict, making it inappropriate for her to represent the defendant. The trial court, *Hadden, J.,* concluded that insufficient facts had been presented to warrant a finding that a conflict of interest existed and denied the motion.

On November 2, 1987, the defendant renewed his motion to permit the withdrawal of defense counsel. Defense counsel stated that the public defender's office had previously represented both the victim and a state's witness, Yule Watley, on charges about which the public defender's office files might contain information relevant to their credibility. The court abstained from ruling on the motion pending an inquiry by the state to determine whether the witnesses were willing to waive their rights to confidentiality. Defense counsel argued that a waiver must also be obtained from the defendant under the circumstances. The trial court rejected this claim, stating that a waiver by the defendant would only be required if the representation of the defendant was simultaneous to the representation of the witnesses, which was not the case. Further, the trial court noted that waiver by the witnesses of their rights to confidentiality would actually put the defendant in a more advantageous position than if defense counsel did not represent him because counsel would have access to information regarding two state's witnesses that another attorney would not have.

On November 3, 1987, the state informed the court that the two witnesses were willing to waive any rights they had concerning confidentiality with respect to their earlier representation by the public defender's office. Defense counsel claimed that she should still be permitted to withdraw because the defendant was unwilling to execute a waiver and would be prejudiced

by defense counsel's inability to be a zealous advocate on his behalf due to her divided loyalty. The trial court denied the motion to withdraw and expressed doubt as to any potential for conflict since the witnesses were former clients and were willing to waive their rights to confidentiality. Further, the trial court reiterated its belief that the defendant would be at an advantage in that the witnesses' waivers would afford the defendant access to information regarding the witnesses that he would not have otherwise.

The trial court granted the defendant's request for a continuance so that defense counsel could examine the public defender's files concerning the witnesses. Subsequently, both witnesses waived any rights of confidentiality arising out of their prior representation by the public defender's office. Shortly thereafter, defense counsel informed the court that she had been unable to obtain the pertinent files during the continuance. The trial court consequently agreed to allow the defendant to recall the witnesses if future examination of the files revealed evidence relevant to cross-examination.

"Our state and federal constitutions guarantee a criminal defendant the right to assistance of counsel. U.S. Const., amend. VI; Conn. Const., art. I, § 8. As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest. *Wood* v. *Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *Glasser* v. *United States,* 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Martin,* 201 Conn. 74, 78, 513 A.2d 116 (1986); *Festo* v. *Luckart,* 191 Conn. 622, 626–27, 469 A.2d 1181 (1983)." *State* v. *Williams,* 203 Conn. 159, 166–67, 523 A.2d 1284 (1987). "The trial court has 'broad discretionary power to determine whether an attorney should be disqualified for an alleged . . . conflict of interest.' *State* v. *Jones,* 180 Conn. 443, 448,

429 A.2d 936 (1980) [aff'd, 193 Conn. 70, 475 A.2d 1087 (1984)]. Moreover, '[i]n determining whether the Superior Court has abused its discretion in denying a motion to disqualify, this court must accord every reasonable presumption in favor of its decision.' *State* v. *Jones,* supra." *State* v. *Edwards,* 201 Conn. 125, 138, 513 A.2d 669 (1986). The ultimate issue is whether the trial court could reasonably have reached the conclusion that it did. *State* v. *Hamele,* 188 Conn. 372, 383, 449 A.2d 1020 (1982).

The trial court concluded that no conflict of interest existed and that the defendant would not suffer prejudice as a result of representation by appointed defense counsel because the witnesses were former clients and had waived any rights to confidentiality arising from their prior representation by the office of the public defender. The defendant has not sustained his burden of demonstrating that this ruling constituted an abuse of discretion. Although defense counsel initially stated that she would be unable zealously to advocate in favor of the defendant due to her divided loyalty, the trial court could reasonably have concluded that this concern was subsequently erased by the witnesses' waivers of their rights of confidentiality. In addition, the defendant does not deny that defense counsel's subsequent cross-examination of the witnesses at issue was in fact vigorous.

The defendant argues that he was prejudiced because the court failed to conduct an adequate "investigation" following his allegation of a conflict of interest. We do not agree. "A trial court has the obligation to inquire into the possibility of a conflict of interest 'when it knows or reasonably should know' that a potential conflict exists." *State* v. *Williams,* supra, 168, quoting *State* v. *Martin,* supra, 79. Proper inquiry was undertaken in this case. In response to the defendant's

motion to permit withdrawal of defense counsel, the trial court heard arguments from both the defendant and defense counsel. In addition, the trial court directed the state to inquire whether the witnesses were willing to waive their rights of confidentiality. Once the waivers were executed, the trial court reasonably determined that any risk of a potential conflict of interest was eliminated. Thus, it was not necessary to inquire further into the matter.

We conclude that the trial court reasonably determined that, under the circumstances, no conflict of interest existed and that the defendant would not suffer prejudice as a result of defense counsel's representation of him. We note, further, that the defendant has not alleged that his representation by defense counsel actually prejudiced the conduct of his trial in any way. The trial court, therefore, did not abuse its discretion in denying the defendant's motion to permit the withdrawal of defense counsel.

## II

The defendant's second claim is that the trial court, by granting the state's motion to join the two informations for trial, violated his rights to a unanimous verdict, due process of law and a fair trial guaranteed by the sixth,[8] fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. Specifically, he argues that joinder raised a reasonable likelihood that the evidence introduced in both cases was assessed cumulatively by the jury resulting in a less than unanimous verdict and conviction by a lesser standard of proof than beyond a reasonable doubt. We do not agree.

[8] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

On October 27, 1987, the state filed a motion to consolidate the two informations pending against the defendant. The state argued that joinder was appropriate and would promote judicial economy because both informations involved assault charges and the same complaining witness so that much of the evidence would apply to both incidents. The defendant opposed the motion arguing that the cases were not of the same character and that he would suffer prejudice if they were consolidated since he might wish to exercise his right to testify in one case but not in the other. Nevertheless, the trial court granted the state's motion for joinder.

General Statutes § 54-57 and Practice Book § 829 expressly authorize a trial court to order a defendant to be tried jointly on charges arising separately. "In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. *State* v. *Greene,* 209 Conn. 458, 463, 551 A.2d 1231 (1988); *State* v. *Pollitt,* 205 Conn. 61, 67–68, 530 A.2d 155 (1987); *State* v. *Boscarino,* 204 Conn. 714, 720–21, 529 A.2d 1260 (1987); *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982); *State* v. *King,* 187 Conn. 292, 299, 445 A.2d 901 (1982); *State* v. *Jonas,* 169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976). The defendant bears a heavy burden of showing that the ' "denial of severance resulted in substantial injustice," and that any resulting prejudice was "beyond the curative power of the court's instructions." ' *State* v. *Boscarino,* supra, 721, quoting *State* v. *King,* supra, 302; *State* v. *Silver,* 139 Conn. 234, 240, 93 A.2d 154 (1952)." *State* v. *Herring,* 210 Conn. 78, 94–95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "[W]hether ' "a joint trial will be substantially prejudicial to the rights

of the defendant . . . means something more than that a joint trial will be less than advantageous to the defendant" '; *State* v. *Bell*, supra, 411; *State* v. *Silver*, supra, 240; *State* v. *McCarthy*, 130 Conn. 101, 103, 31 A.2d 921 (1943) . . . ." Id., 97–98.

This court has held that there are several factors that a trial court should consider in determining whether severance is required in order to avoid the " 'omnipresent risk . . . that "although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all." *United States* v. *Lotsch*, 102 F.2d 35, 36 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793, 83 L. Ed. 1500 (1939).' *State* v. *Boscarino*, supra, 721–22. These factors include: (1) whether the charges involved 'discrete, easily distinguishable factual scenarios'; (2) whether the crimes were of a 'violent nature' or concerned 'brutal or shocking conduct' on the defendant's part; and (3) the 'duration and complexity of the trial.' Id., 722–23." *State* v. *Herring*, supra, 95. If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred. Id. Applying these factors to the present case, we conclude that joinder did not result in substantial injustice.

First, the charges pending against the defendant involved "discrete, easily distinguishable factual scenarios." Although the victim was the same in each case, the factual circumstances were different. One case involved a physical attack upon the victim in a parking lot and an abduction to an empty apartment. The other case involved a less serious altercation between the defendant and the victim in the home of the victim's niece. The wounds suffered by the victim were of differing character and severity. The victim sus-

tained bruising and deep knife wounds in the parking lot incident while she sustained comparatively minor, superficial cuts in the incident at her niece's home. See id., 96. Thus, the distinctiveness of the factual scenarios made it unlikely that the jurors would confuse the two cases.

The trial court itself emphasized the distinctiveness and separateness of the two cases. There were different eyewitnesses who testified to each incident. Also, the cases were treated separately by the trial court, the state and the defendant through their continual references to the different dates of each offense, which were almost four months apart, during examination of the witnesses, closing arguments and instructions to the jury. This further minimized any risk of juror confusion.

Second, although assault and kidnapping may involve a certain element of violence, the conduct of the defendant in these cases was not so "brutal or shocking" as to create a substantial risk that the jury, with explicit instructions to treat each offense separately, would nevertheless treat the evidence cumulatively. See id., 97 (while any murder involves violent, upsetting circumstances, it would be unrealistic to assume that any and all deaths are inevitably so "brutal and shocking" that a jury, with proper instructions to treat each killing separately, would be prejudiced by a joint trial). The physical harm that was inflicted on the victim, although serious, was not disabling, and the element of sexual derangement present in *Boscarino* was absent in these cases. See *State* v. *Herring,* supra, 96; *State* v. *Horne,* 19 Conn. App. 111, 124, 562 A.2d 43, cert. granted, 213 Conn. 807, 568 A.2d 793 (1989).

Third, the trial was of short duration and the evidence was not complex. The jury heard testimony of fourteen witnesses over five days with the admission of twenty-

eight exhibits. See *State* v. *Herring,* supra, 97 (no undue duration or complexity where eight days of testimony by twenty-three witnesses); compare *State* v. *Boscarino,* supra, 723–24 (approximately ten weeks of testimony by fifty-five witnesses constituted undue duration and complexity). As previously stated, the presentation of evidence was orderly inasmuch as it was organized by the dates of the incidents so as to mitigate further any potential complexity and risk of juror confusion. See *State* v. *Horne,* supra, 120.

"Finally, although ' "a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence" '; *State* v. *Boscarino,* supra, 724–25, quoting *State* v. *Tinsley,* 180 Conn. 167, 170, 429 A.2d 848 (1980); where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." *State* v. *Herring,* supra, 97. In this case, the trial court admonished the jury to evaluate each count separately in reaching its verdict and to consider only the evidence that was pertinent to a particular charge in reaching a verdict on that charge. Therefore, the trial court's instruction further minimized any risk of prejudice that might have been caused by the joinder of the two informations.

We conclude that the trial court's joinder did not result in substantial injustice, and therefore, that the trial court did not abuse its discretion in granting the state's motion for joinder.

III

The defendant's third claim is that the trial court violated his right to a unanimous verdict guaranteed by the sixth amendment to the United States constitution when it denied his request to instruct the jury that if

they found the defendant guilty of one or more charges, they must be unanimous in their decision as to what conduct by the defendant supported a verdict of guilty of that charge. We do not agree.

The trial court instructed the jury that two alternative schemes of conduct would support findings of guilt on the lesser included offenses of assault in the second degree under General Statutes § 53a-60 and criminal attempt to commit assault in the second degree under General Statutes §§ 53a-49 and 53a-60.[9] In addition, the trial court instructed the jury that "[T]he verdict you render must be unanimous as to each count . . . . The verdict you render must be unanimous . . . ." The defendant objected to the jury instruction

---

[9] Although General Statutes § 53a-60 sets forth five alternative schemes of conduct that can support a finding of assault in the second degree, the trial court charged as to only two schemes as follows: "Now, the statute with respect to assault second degree says a person is guilty of assault in the second degree when, and it gives two different ways that one can commit assault second degree, first, with intent to cause serious physical injury to another person he causes such injury to such person, or, the second way is, with intent to cause physical injury to another person, he causes such injury to such person by means of a dangerous instrument."

The trial court did not explicitly instruct that two alternative forms of conduct support a finding of criminal attempt to commit assault in the second degree. It did so by reference to the aforementioned charge.

The defendant asserts that the trial court also instructed the jury that alternative conduct could support a finding of abduction under General Statutes § 53a-91. This assertion is mistaken. The court defined "abduction" as follows: "The term abduct means to restrain a person with intent to prevent his or her liberation by using or threatening to use physical force or intimidation. Abduction need not be proved by establishing the use of force if the proof established the defendant threatened its use in such a manner that the victim reasonably believed force would be used on her if she attempted to resist." Section 53a-91 provides in pertinent part: "(2) 'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use physical force or intimidation." Comparing the court's instruction with the statutory definition, it is clear that the trial court only submitted the second of the two alternative forms of conduct that support a finding of "abduction" to the jury.

and requested that an instruction be given that if the jury found the defendant guilty of a charge it must be unanimous as to the specific conduct which it found to support its verdict. The trial court did recall the jury to give a supplemental charge, but it did not give the unanimity instruction as the defendant had requested.

In determining whether a trial court was required to give a specific unanimity instruction to the jury, this court has utilized the standard of review enunciated in *United States* v. *Gipson,* 553 F.2d 453 (5th Cir. 1977), that " '[w]here a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act.' " (Emphasis in original.) *State* v. *Bailey,* 209 Conn. 322, 334, 551 A.2d 1206 (1988), quoting *State* v. *Flynn,* 14 Conn. App. 10, 36–37, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). In applying the *Gipson* standard in *State* v. *Bailey,* supra, 336–37, however, we noted that "a number of courts have acknowledged the need to avoid unwarranted multiplication of specific unanimity instructions by requiring such a charge only in 'cases where the complexity of the evidence or other factors create a genuine danger of jury confusion.' *United States* v. *Schiff,* [801 F.2d 108, 114–15 (2d Cir. 1986), cert. denied, 480 U.S. 945, 107 S. Ct. 1603, 94 L. Ed. 2d 789 (1987)]; see also *United States* v. *Payseno,* 782 F.2d 832, 835–37 (9th Cir. 1986); *United States* v. *Peterson,* 768 F.2d 64, 66–67 (2d Cir.), cert. denied, 474 U.S. 923, 106 S. Ct. 257, 88 L. Ed. 2d 264 (1985)." Id., 337. More recently, we also recognized "that the Fifth Circuit Court of Appeals itself has limited its holding in *Gipson* in *United*

*States* v. *Bolts,* 558 F.2d 316, 326 n.4 (5th Cir. 1977), cert. denied, 434 U.S. 930, 98 S. Ct. 417, 54 L. Ed. 2d 290 (1978), where it said that '*Gipson* involved a situation where the court *expressly* sanctioned a nonunanimous verdict: the jurors were told that they *could disagree* as to what particular prohibited acts were committed, as long as each juror found that one of the acts had been done.' (Emphasis added.) See *Fryer* v. *Nix,* 775 F.2d 979, 992 (8th Cir. 1985)." *State* v. *Anderson,* 211 Conn. 18, 35, 557 A.2d 917 (1989). We concluded in that case that the defendant had not suffered prejudice as a result of the trial court's denial of his request for a specific unanimity instruction because the jury instructions could not be read as sanctioning a nonunanimous verdict. Id.

We now adhere to our implicit conclusion in *State* v. *Anderson,* supra, that application of the *Gipson* two prong standard of review is limited to cases in which the trial court has sanctioned a nonunanimous verdict. Only if such an instruction was given is this court required to apply that standard in determining whether a specific unanimity instruction was required. In the present case, the jury instructions cannot be read as sanctioning a nonunanimous verdict. Thus, the *Gipson* standard does not apply.

"A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. *State* v. *Gabriel,* 192 Conn. 405, 418, 473 A.2d 300 (1984); *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980)." *State* v. *Casey,* 201 Conn. 174, 178, 513 A.2d 1183 (1986). If omission of an instruction was improper, our review is limited to whether, as a result, there is a reasonable possibility that the jury was misled. *State* v. *Newton,*

8 Conn. App. 528, 540, 513 A.2d 1261 (1986). "It is well established that an instruction containing a misstatement of the law is more likely to be prejudicial than an instruction that contains an omission or an incomplete statement of the law." *State* v. *Preyer,* 198 Conn. 190, 198, 502 A.2d 858 (1985); see also *State* v. *Newton,* supra.

The defendant has failed to show how the trial court's failure to give the requested instruction resulted in a nonunanimous verdict and thereby adversely affected the outcome of his trial. The trial court charged the jury under § 53a-60 in the alternative. He twice stated that the statute sets forth "two *different* ways" of committing assault in the second degree. (Emphasis added.) Further, "the court twice told the jurors in general terms that their verdict had to be unanimous." *State* v. *Benite,* 6 Conn. App. 667, 677, 507 A.2d 478 (1986). "The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions as to the law." *State* v. *Gabriel,* supra, 416. Thus, we presume the jury followed the court's instructions in this case.

We conclude that it is not reasonably possible that the jury was misled by the trial court's refusal to give the specific unanimity instruction requested by the defendant. Therefore, the defendant was not prejudiced by the trial court's omission.

## IV

The defendant's final claim is that the trial court violated his rights to trial by jury and a fair trial guaranteed by the sixth, fifth and fourteenth amendments to the United States constitution when it denied the jury's request to provide a written copy of portions of its instructions. Specifically, the defendant claims that in cases such as this where the court's instructions rise to a certain level of complexity, submission of written

instructions to the jury is constitutionally required to avoid the risk of juror confusion. We do not agree.

During deliberations, the jury submitted the following request to the trial court: "We would appreciate having the following before us in writing: one, a summary of the manner in which the law defines and distinguishes between the various degrees of assault; two, the same as to kidnapping and its lesser included charges; three, a definition of serious physical injury; four, a definition of abduction and restraint." Although the trial court denied the request for written instructions,[10] it reinstructed the jury orally as to all the charges and elements in its request.

Although the practice of submitting written instructions to the jury is permissible; *Haupt* v. *United States,* 330 U.S. 631, 643, 67 S. Ct. 874, 91 L. Ed. 1145, reh. denied, 331 U.S. 864, 67 S. Ct. 1195, 91 L. Ed. 1869 (1947); written instructions are not constitutionally required.[11] We recognize that " '[c]larification of the instructions when the jury or one of its members manifests confusion about the law is mandatory.' " *State* v. *Fletcher,* 207 Conn. 191, 193, 540 A.2d 370

---

[10] The trial court stated that it was without discretion to provide the jury with written instructions. We note that it was within the discretion of the trial court to submit written instructions to the jury. The defendant does not rely on this mistaken conclusion of the trial court for his claim, so it is irrelevant to the disposition of the issue presented.

[11] The defendant, in his brief, contends that numerous state and federal courts utilize written jury instructions and that such instruction has received favorable review and commentary. We do not sit to decide the utility or need for written instructions in the Connecticut courts. To the extent that the defendant seeks such a decision, his request is more properly directed to the Rules Committee of the Superior Court. See *Rules Committee of the Superior Court* v. *Freedom of Information Commission,* 192 Conn. 234, 237, 472 A.2d 9 (1984) (the function of the Rules Committee is to consider proposed changes in the rules of practice for the Superior Court and to recommend amendments to the Practice Book).

(1988); Practice Book § 864.[12] Nevertheless, this duty can be adequately fulfilled by supplemental oral instructions. The question in reviewing the constitutional adequacy of jury instructions is whether viewed in the context of the instructions as a whole, including any supplemental instructions, it is reasonably possible that the jury was misled. *State* v. *Hufford,* 205 Conn. 386, 407, 533 A.2d 866 (1987); *State* v. *Usry,* 205 Conn. 298, 314, 533 A.2d 212 (1987); *State* v. *Pollitt,* 205 Conn. 132, 150, 531 A.2d 125 (1987).

In its initial instruction the trial court defined all the relevant charges and their elements. Subsequently, it redefined certain of those charges and elements in response to the jury's request. Because the jury did not seek any further instruction prior to rendering its verdicts, we may reasonably infer that the supplemental charge clarified any initial juror confusion. We conclude, therefore, that considering the court's jury instructions as a whole, including the supplemental oral instruction, there is no reasonable possibility that the jury was misled.

The judgments are affirmed.

In this opinion the other justices concurred.

---

[12] Practice Book § 864 provides: "If the jury, after retiring for deliberations, request additional instructions, the judicial authority, after notice to the parties, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions."