STATE OF CONNECTICUT *v.* THEODORE JONES
(12213)

O'CONNELL, LAVERY and SCHALLER, Js.

Argued October 31, 1994—decision released April 4, 1995

*Thomas Ullmann,* public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (3),[1] and one count of failure to appear in the first degree in violation of General Statutes § 53a-172.[2] The defendant claims that the trial court improperly (1) admitted into evidence the defendant's answers to questions reasonably likely to elicit an incriminating response, posed by detectives immediately following the booking procedure, while in cus-

---

[1] General Statutes § 53a-60 (a) provides in pertinent part: "A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-172 (a) provides: "A person is guilty of failure to appear in the first degree when, while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear."

tody and without having been given *Miranda* warnings,[3] in violation of his right against self-incrimination under the fifth amendment to the United States constitution[4] and article first, § 8, of the Connecticut constitution,[5] (2) refused to sever the failure to appear charge, in violation of his constitutional right to present a defense, following a convincing showing of prejudice and the offering of alternative remedies to preserve the economy and expedition of judicial resources and (3) concluded that there was sufficient evidence to establish that the defendant had been legally called in court, an element necessary to sustain the conviction of failure to appear in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 15, 1990, the defendant went with his girlfriend, Beverly Williams, to the Ebony Lounge in Hamden. They were delivering food to Williams' friend, Bessie Bird, who was working as a bartender at the Ebony Lounge.

An intoxicated man was sitting at the end of the bar, talking to himself and acting strange. Bird refused to continue to serve the intoxicated man, whereupon the man became angry and demanded that he be served. Williams tried to help Bird deal with the inebriated customer. The defendant sat next to Williams as she talked to the intoxicated man. When the intoxicated man made

---

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] The fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ." The fifth amendment is applicable to state criminal prosecutions by virtue of the fourteenth amendment. *Malloy* v. *Hogan*, 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964).

[5] Article first, § 8, of the Connecticut constitution provides in pertinent part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

a remark to Williams, the defendant got up as if to hit him and said, "You talking to my woman." The defendant was stopped by two other patrons, Fred Gray and James Burgess. They told the defendant to stay out of it and let the bartenders handle it. The intoxicated man left soon thereafter.

The defendant and Burgess got into an argument, with Burgess telling the defendant that he should have stayed out of the dispute. The defendant then sat at a table with Williams, where they argued about whether the intoxicated man had called her a "bitch," as the defendant insisted, or a "witch," as Williams believed. The defendant and Williams asked Bird which word the man had used.

Burgess overheard the defendant telling Williams and Bird that Burgess should have stayed out of the dispute. Burgess walked over to where the defendant was standing, whereupon the defendant pushed him. Burgess pushed the defendant back.

A fistfight started between the defendant and Burgess. After being knocked to the floor, the defendant took a pearl-handled knife with a four inch blade out of his pocket and cut Burgess on the face. Bird and Williams tried unsuccessfully to intervene. The defendant wielded the knife toward Burgess and said, "Come on, I'll cut you again." Gray attempted to intervene, but the defendant threatened to cut him also. The defendant then left the bar.

Burgess was taken to a hospital. His facial wounds required numerous stitches and caused permanent scarring. Later that evening, the defendant telephoned Bird at the Ebony Lounge and apologized for the incident. That same night, the police took statements from Bird, Gray, and Burgess, all of whom knew the defendant by the name "Blue." Bird telephoned Williams at the

request of the police, and it was established that the individual known as Blue was Roosevelt Smith.

On August 21, 1990, the police went to Williams' home, where they thought the defendant lived, but they did not find him there. On October 30, 1990, the police returned to Williams' residence with a warrant charging Roosevelt Smith with first degree assault in the Ebony Lounge incident. The police found the defendant in a bedroom closet and arrested him. During the booking procedure at the police station, the defendant told the police his name was Roosevelt Smith, and he signed the fingerprint cards with that name.

On October 31, 1990, the defendant was arraigned as Roosevelt Smith in Meriden Superior Court and was assigned a public defender. He was released on a promise to appear. On November 14, 1990, the defendant was notified through a written notice of transfer, which he signed as Roosevelt Smith, that his case was being transferred to the Superior Court in New Haven for November 27, 1990. When his case was called on that date, the defendant did not appear.

On February 11, 1991, the Hamden police went to Williams' address with a warrant for the rearrest of Roosevelt Smith for failure to appear. They found the defendant there, and arrested him. During the booking procedure, the defendant gave his name as Roosevelt Smith, and he signed the fingerprint cards as Roosevelt Smith.

When the police ran the name Roosevelt Smith through their computer files, they received the name Theodore Jones as an alias. When the defendant was asked about the discrepancy in names, he stated that he used the name Roosevelt Smith in the Ebony Lounge incident, and that his name was Theodore Jones. As a result of the false signature given on the fingerprint cards, the defendant was charged with and arrested

for the crimes of forgery, criminal impersonation, and interfering with a police officer. The defendant pleaded guilty to forgery in the third degree in violation of General Statutes § 53a-140[6] and was sentenced to six months incarceration, suspended, with one year conditional discharge.

## I

The defendant first claims that the trial court improperly denied his motion to suppress his answers to questions, posed by detectives immediately following the booking procedure, that were reasonably likely to elicit incriminating responses. The defendant had been asked those questions while in custody and without having received *Miranda* warnings, in violation of his right against self-incrimination under the fifth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[7] We disagree.

The following additional facts are necessary for resolution of this matter. Outside the presence of the jury, the state proffered the testimony of Detective John Riordan of the Hamden police department. Riordan testified that during the booking procedure on the assault charge, the defendant represented himself as Roosevelt Smith. The defendant signed his fingerprint card as Roosevelt Smith.

---

[6] General Statutes § 53a-140 (a) provides: "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument, or issues or possesses any written instrument which he knows to be forged."

[7] Although the defendant has framed his claim under both the state and federal constitutions, he has not provided an independent analysis of our state constitutional provisions. In the absence of any such analysis by the defendant in this case, we confine our analysis to a discussion of his rights under the federal constitution. *State* v. *Pinnock*, 220 Conn. 765, 776 n.3, 601 A.2d 521 (1992); *Phillips* v. *Warden*, 220 Conn. 112, 131 n.15, 595 A.2d 1356 (1991).

On February 11, 1991, the defendant was rearrested for his failure to appear in court on November 27, 1990, when the assault case was called. The warrant was issued in the name of Roosevelt Smith.

During the booking procedure on the failure to appear charge, the defendant again signed the fingerprint cards as Roosevelt Smith. Riordan noticed that the defendant was having difficulty spelling Roosevelt. Riordan ran the name Roosevelt Smith through the police computer files and received information that Roosevelt Smith had an alias of Theodore Jones. When Riordan asked the defendant about the discrepancy in his name, the defendant acknowledged that his name was Theodore Jones, and that he had used the name Roosevelt Smith in the assault investigation.

The state wanted to use Riordan's testimony about the defendant's use of the name Roosevelt Smith to show consciousness of guilt on the assault charge, and to show that the defendant knew that his pending case was in the name of Roosevelt Smith on the failure to appear charge. The defendant moved to suppress his statements to Riordan and the fingerprint cards he had signed, arguing that the statements and signatures had been obtained from him while he was in custody and without the benefit of *Miranda* warnings. The trial court denied the motion to suppress.

As a preliminary matter, we must determine whether this claim was waived by the defendant's plea of guilty on the forgery charge. The state argues that the unconditional entry of a voluntary plea of guilty " 'operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings.' " *State* v. *Niblack*, 220 Conn. 270, 276–77, 596 A.2d 407 (1991), quoting *State* v. *Madera* 198 Conn. 92, 97, 503 A.2d 136 (1985). The authorities cited by the state are distinguishable from this case.

In both *Niblack* and *Madera*, a plea was entered in the file, followed by an attempt on appeal to challenge a pretrial proceeding in the same case. This was not the situation here.

In this case, no plea was entered in a file that was subject to appeal. In *Niblack* and *Madera*, the appeals arose from the case that had been subject to the plea bargain. Here, the plea was entered in the forgery case, not in the assault or failure to appear cases, which are the subject of the appeal. The holdings in *Niblack* and *Madera* do not extend to the factual underpinnings in this case.

We now consider whether the trial court properly denied the defendant's motion to suppress. Custodial interrogation under *Miranda* includes both express questioning, and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island* v. *Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

The questions the police asked of the defendant during the booking procedure qualify as custodial interrogation. In *Pennsylvania* v. *Muniz*, 496 U.S. 582, 601, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990), however, a plurality of the Supreme Court recognized a "routine booking question" exception to the requirement of *Miranda* warnings. The exception encompasses questions that secure "biographical data necessary to complete booking or pretrial services." (Internal quotation marks omitted.) Id. The court acknowledged that the questions qualify as custodial interrogation but held that questions such as name, address, height, weight, eye color, date of birth, and age fall outside the sweep of *Miranda* v. *Arizona*, supra, 384 U.S. 436.

Here, the purpose of the questions was not to elicit an incriminating response. Rather, the purpose was to gather the biographical data necessary to complete the booking procedure. "The information requested here—merely a name—was simply that identification of a suspect necessary for his booking and arraignment." *United States* v. *Carmona*, 873 F.2d 569, 573 (2d Cir. 1989). "Routine questions . . . ordinarily innocent of any investigative purpose, do not pose the dangers *Miranda* was designed to check . . . ." *United States* v. *Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986).

The situation in this case was unlike that in *United States* v. *Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983), in which the questions asked "related directly to an element of a crime that . . . [the investigator] had reason to suspect." Here, the defendant's true name was not in itself incriminatory. The defendant's name did not connect him to the assault, nor was it an element of the assault. It was merely used at trial to show consciousness of guilt. Moreover, even had Riordan known the defendant's name before he began booking him, he could have asked the defendant what his name was. *United States* v. *Carmona*, supra, 873 F.2d 573. "Police often know the names of suspects they intend to apprehend . . . . As a cautionary measure, police usually prudently inquire as to the suspect's name to ensure that the wrong person is not apprehended." Id.

The statements by the defendant and the signatures on the fingerprint cards fall within the "routine booking question" exception to the *Miranda* warning requirement. The trial court's denial of the defendant's motion to suppress was proper.

## II

The defendant next claims that the trial court improperly denied his motion to sever the charge of failure

to appear in the first degree. He argues that the resulting prejudice was beyond the curative power of the trial court's instructions and deprived him of his right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We do not agree.

The trial court has the authority to order a defendant to be tried jointly on charges arising from separate informations. General Statutes § 54-57; Practice Book § 829. "The decision of whether to order severance of cases joined for trial is within the discretion of the trial court, and 'the exercise of that discretion [may] not be disturbed unless it has been manifestly abused.' " *State* v. *Boscarino*, 204 Conn. 714, 720–21, 529 A.2d 1260 (1987), quoting *State* v. *King*, 187 Conn. 292, 299, 445 A.2d 901 (1982).

On appeal, the defendant bears the burden of showing that the joint trial substantially prejudiced him. *State* v. *Grant*, 33 Conn. App. 133, 137, 634 A.2d 1181 (1993); *State* v. *Carpenter*, 19 Conn. App. 48, 62, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). "Substantial prejudice does not necessarily result from a denial of severance even where evidence of one offense would not have been admissible at a separate trial involving the second offense. A trial court will not have manifestly abused its discretion in denying severance if the state's orderly presentation of evidence has prevented confusion of the jury and has enabled the jury to consider the evidence relevant to each charge separately and distinctly." *State* v. *Pollitt*, 205 Conn. 61, 68, 530 A.2d 155 (1987).

There are several factors that a trial court should consider in determining whether severance is required. "These factors include: (1) whether the charges involved discrete, easily distinguishable factual scenarios;

(2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial." (Internal quotation marks omitted.) *State* v. *Jennings*, 216 Conn. 647, 658, 583 A.2d 915 (1990). If we find that any of these factors is present, we must decide whether the trial court's jury instructions cured any prejudice that might have occurred. Applying these factors to the present case, we conclude that joinder did not result in substantial injustice.

First, the charges pending against the defendant involved "discrete, easily distinguishable factual scenarios." Although the two counts were legally related, the evidence of the assault was admissible on the failure to appear count as evidence on the element of being charged with the commission of a felony; see *State* v. *Candito*, 4 Conn. App. 154, 161, 493 A.2d 250 (1985); and the evidence of the defendant's failure to appear in court was admissible as consciousness of guilt on the assault count. Even if the evidence of one count was not admissible on the other count, severance was not required; *State* v. *Pollitt*, supra, 205 Conn. 658; because the state presented its evidence in a clear, comprehensive and straightforward manner, the jury was not likely to become confused. *State* v. *Rose*, 29 Conn. App. 421, 431, 615 A.2d 1058, cert. denied, 224 Conn. 923, 618 A.2d 529 (1992).

Second, although assault involves a certain element of violence, the conduct of the defendant in this case was not so brutal or shocking as to create a substantial risk that the jury would treat the evidence cumulatively. *State* v. *Herring*, 210 Conn. 78, 97, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "The physical harm that was inflicted on the victim, although serious, was not disabling"; *State* v. *Jennings*, supra, 216 Conn. 659; and

does not approach the type of physical harm considered brutal or shocking in *Boscarino*. *State* v. *Herring*, supra, 96.

Third, "the trial was of short duration and the evidence was not complex." *State* v. *Jennings*, supra, 216 Conn. 659. The jury heard the testimony of seven witnesses over three days with the admission of eight exhibits. See *State* v. *Herring*, supra, 210 Conn. 97; cf. *State* v. *Boscarino*, supra, 204 Conn. 723–24. The complexity and risk of confusion at trial did not approach that involved in *Boscarino*. *State* v. *Herring*, supra, 97. The presentation of evidence was orderly and the jury was not likely to confuse the evidence relevant to each case. *State* v. *Horne*, 19 Conn. App. 111, 124, 562 A.2d 43, cert. granted, 213 Conn. 807, 568 A.2d 793 (1989).

"Finally, although ' "a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible] evidence [of other crimes]" '; *State* v. *Boscarino*, [supra, 204 Conn. 724–25], quoting *State* v. *Tinsley*, 180 Conn. 167, 170, 429 A.2d 848 (1980); where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." *State* v. *Herring*, supra, 210 Conn. 97. In this case, the trial court instructed the jury that the defendant was on trial for two distinct offenses that must be considered separately. "The trial court's instruction further minimized any risk of prejudice that might have been caused by the joinder of the two informations." *State* v. *Jennings*, supra, 216 Conn. 647. We conclude that the trial court did not abuse its discretion in denying the defendant's motion to sever.

III

The defendant's final claim is that there was insufficient evidence to sustain his conviction for failure to

appear. Specifically, he argues that the state failed to present any evidence to prove the essential element that he was legally called to appear in court. We do not agree.

"The standard of review of an insufficiency claim is twofold. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Milardo*, 224 Conn. 397, 402–403, 618 A.2d 1347 (1993); *State* v. *Jarrett*, 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg*, 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990)." (Internal quotation marks omitted.) *State* v. *Harris*, 227 Conn. 751, 757, 631 A.2d 309 (1993). "The issue is whether the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Adams*, 225 Conn. 270, 276, 623 A.2d 42 (1993).

On the basis of the evidence and the inferences reasonably drawn therefrom, the jury could have concluded beyond a reasonable doubt that the defendant failed to appear pursuant to § 53a-172 (a). For the purpose of our consideration of this offense, we take judicial notice of the file in the trial court. See *Krawiec* v. *Kraft*, 163 Conn. 445, 451, 311 A.2d 82 (1972). Upon examination of the promise to appear included therein, we note that on October 31, 1990, the defendant, under oath, signed a promise to appear in the Meriden Superior Court. On November 14, 1990, the case was transferred to part A of the New Haven Superior Court, where the case was continued until a hearing on

November 27, 1990. The defendant was given notice of the transfer to New Haven and the November 27 continuance date, by virtue of a notice of transfer form, which he signed as Roosevelt Smith. The file indicated that on November 27, 1990, the New Haven Superior Court ordered the rearrest of the defendant for failure to appear on that date.

There was no dispute that the defendant had received notice of his obligation to appear in court on November 27, 1990. The defendant contends that the evidence was insufficient for the jury to have found that he was legally called on November 27, 1990. Although there was no direct evidence that established the defendant was legally called on November 27, 1990, the jury could have reasonably inferred that the arrest warrant was issued because the defendant was not in court on the day his case was called. Viewing the evidence in the light most favorable to sustaining the verdict; *State* v. *Turmon*, 34 Conn. App. 191, 195, 641 A.2d 138 (1994); we conclude that the evidence was sufficient for a jury reasonably to have inferred that the rearrest warrant was issued on November 27, 1990, because the defendant was legally called and failed to appear at New Haven Superior Court as he was required to do.

The judgments are affirmed.

In this opinion the other judges concurred.