# STATE OF CONNECTICUT *v.* JOHN E. MORTON III
## (AC 18466)

Hennessy, Pellegrino and Daly, Js.

Argued June 12—officially released August 22, 2000

*Norman A. Pattis*, with whom, on the brief, was *Rosemarie Paine*, for the appellant (defendant).

*Robin S. Schwartz*, special deputy assistant state's attorney, with whom, on the brief, was *Patricia A. Swords*, state's attorney, and *Matthew C. Gedansky*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, John E. Morton III, appeals from the judgments of conviction, rendered after a jury trial, of two counts of failure to appear in the second degree in violation of General Statutes § 53a-173, two counts of criminal violation of a protective order in violation of General Statutes § 53a-110b, one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95, one count of disorderly conduct in violation of General Statutes § 53a-182 and one count of threatening in violation of General Statutes § 53a-62. Three separate informations were consolidated for trial. On appeal, the defendant claims that the trial court improperly consolidated the informations. We affirm the judgments of the trial court.

The following facts and procedural history are relevant for our resolution of this appeal. On November 21, 1995, the victim, Nicole Carvel, and the defendant lived together. On that date, they got into an argument that culminated in the defendant's kicking a door in and threatening to kill her. The police were called to the home, and the defendant was arrested. The defendant was charged with disorderly conduct, threatening and, after missing a scheduled court date, failure to appear in the second degree.

On June 22, 1996, the victim and the defendant, then married,[1] got into another argument in which the defendant struck her in the back of her head. The victim struck him back, and he placed her in a headlock. The defendant then left the premises and later returned to gather some of his clothing. He and the victim resumed their argument, which ultimately culminated in the defendant's threatening to kill her. She called the police and they arrested the defendant. The defendant was

---

[1] At the time, the complainant also was six months pregnant.

charged with disorderly conduct, threatening, criminal violation of a protective order and failure to appear in the second degree.

On March 15, 1997, the defendant, then separated from the victim, contacted her and asked her to return a steam cleaner to him. The victim and her sister brought the steam cleaner to the defendant's mother's house. As they were unloading it from the car, the defendant, while holding a knife, placed both women in headlocks.[2] After a struggle, in which the victim was cut on her left arm by the knife, both women broke free. The victim ran to a neighboring house and called the police. After the police officers saw that the victim was wounded, they arrested the defendant. The defendant was charged with attempt to commit assault in the first degree, assault in the second degree, two counts of unlawful restraint in the first degree, criminal violation of a protective order and threatening.

Before jury selection, the state filed a motion seeking to consolidate for trial the charges against the defendant contained in three informations that had been filed in connection with the previously mentioned incidents. The court granted the state's motion. As to the incident of November 21, 1995, the jury found the defendant not guilty of disorderly conduct and threatening, but found him guilty of failure to appear in the second degree. As to the incident of June 22, 1996, the jury found him not guilty of threatening, but guilty of one count each of disorderly conduct, criminal violation of a protective order and failure to appear in the second degree. As to the incident of March 15, 1997, the jury found the defendant not guilty of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a), assault in the second degree in violation of General Statutes § 53a-60a and one count of

---

[2] During the struggle, the defendant threatened the complainant.

unlawful restraint in the first degree. The jury, however, found him guilty of one count each of unlawful restraint in the first degree, criminal violation of a protective order and threatening. The court then sentenced the defendant to a total effective sentence of nineteen years, execution suspended, with twelve and one-half years to serve and three years of probation.

The defendant claims that the court improperly consolidated the three informations because the third information should be considered to have alleged brutal or shocking conduct, thereby precluding consolidation pursuant to *State* v. *Boscarino*, 204 Conn. 714, 722–23, 529 A.2d 1260 (1987). We disagree.

"General Statutes § 54-57[3] and Practice Book § [41-19 (formerly § 829)][4] expressly authorize a trial court to order a defendant to be tried jointly on charges arising separately. In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice and that any resulting prejudice was beyond the curative power of the court's instructions. . . . [W]hether a joint trial will be substantially prejudicial to the rights of the defendant . . . means something more than that a joint trial will be less advantageous to the defendant. . . .

"We recognize that an improper joinder may expose a defendant to potential prejudice for three reasons.

---

[3] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[4] Practice Book § 41-19, formerly § 829, provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . . Nevertheless, because joinder foster[s] economy and expedition of judicial administration . . . we consistently have recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion, we will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges.

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have

occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Delgado*, 243 Conn. 523, 531–33, 707 A.2d 1 (1998).

In the present case, the defendant concedes that factors one and three, as discussed in *Delgado*, are not applicable. Therefore, our review is limited to whether his conduct in the March 15, 1997 incident rises to the level of brutal or shocking behavior and, if so, whether the court's jury instruction cured any prejudice that might have occurred as a result of consolidating the informations.

As previously stated, on March 15, 1997, as the victim and her sister were unloading a steam cleaner at the defendant's mother's house, the defendant, while holding a knife, placed both women in headlocks. During the struggle, the victim was cut on her left arm by the knife. The victim and her sister, however, broke free and called the police.

In researching case law regarding what constitutes brutal or shocking behavior, it is clear that although, as the defendant stated, assault involves a certain element of violence, the conduct of the defendant in this case was not so brutal or shocking as to create a substantial risk that the jury would treat the evidence cumulatively.[5]

In *State* v. *Jennings*, 216 Conn. 647, 583 A.2d 915 (1990), the court, in citing *Boscarino* and *State* v. *Herring*, 210 Conn. 78, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989), reiterated that when the crimes charged "can be characterized as

---

[5] The case we cite as authority for our conclusion, *State* v. *Jennings*, 216 Conn. 647, 583 A.2d 915 (1990), clearly can be distinguished from the present case. *Jennings* can, however, provide guidance for our determination of whether the defendant's behavior can fairly be considered brutal or shocking.

violent,[6] the test becomes whether the facts of one are 'so brutal or shocking' as to amount to prejudice if tried together. The crimes that were allowed to be consolidated for trial in *Jennings* were assault and kidnapping in one incident and criminal attempt to commit assault and criminal trespass in the other incident. . . . The two cases consolidated for trial in *Jennings* concerned one assault in which the defendant allegedly cut his victim's neck with a box cutter, and then punched, kicked and 'threw her about a parking lot,' and another assault in which he cut the victim's finger and arm with a knife." *State* v. *Stevenson*, 43 Conn. App. 680, 690–91, 686 A.2d 500 (1996), cert. denied, 240 Conn. 920, 692 A.2d 817 (1997). The *Jennings* court found that the physical harm that was inflicted on the victim in that case, although serious, was not disabling and did not rise to the level of the type of physical harm considered brutal or shocking in *Boscarino*. *State* v. *Jennings*, supra, 659.

In the present case, the defendant, while holding a knife, cut the victim on her arm as he was attacking her. She did not seek medical attention for her injuries. Therefore, as the court found in *Jennings*, although the defendant inflicted physical harm on the victim, her injuries were not disabling and could not be seen as rising to the level of the type of physical harm considered brutal or shocking in *Boscarino*, which involved kidnapping, burglary, and multiple counts of assault and sexual assault.

Furthermore, even if the defendant's conduct could fairly be seen as brutal or shocking, we still must decide whether the court's jury instruction cured any prejudice that might have occurred. "[A]lthough a curative

---

[6] The defendant's conduct in the incidents of November 21, 1995, and June 22, 1996, that of kicking down a door, striking the complainant in the back of the head and putting her into a headlock, certainly is violent.

instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence . . . where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Internal quotation marks omitted.) *State* v. *Hermann*, 38 Conn. App. 56, 63–64, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). "Barring contrary evidence [and there is none], we must presume that juries follow the instructions given them by the trial judge." (Internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 32, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997).

In the present case, even if the defendant's conduct could be considered brutal or shocking, any possible prejudice caused by the consolidation of the informations for trial unquestionably was ameliorated by the court's explicit instruction to the jury that it should consider the offenses separately. By returning a verdict of not guilty on the charges of threatening in two of the informations and guilty of threatening in the third information, the jury evidently was able to consider the charges in the three informations separately. Moreover, we cannot conclude that consolidating the three informations caused the jury to be substantially prejudiced against the defendant in light of the fact that it found him not guilty of the most serious charges, assault in the second degree and attempt to commit assault in the first degree.

It is clear that the court's instruction was successful in that it precluded the jury from treating the evidence of each incident cumulatively. We therefore conclude that the court did not abuse its discretion in consolidating the three informations.

The judgments are affirmed.

In this opinion the other judges concurred.