## State of Connecticut *v.* James Grant, Jr. (11421)

Foti, Lavery and Heiman, Js.

Argued September 28—decision released November 30, 1993

*Herbert R. Scott,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Cara F. Eschuk,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of three counts of sexual assault in the second degree in violation of General Statutes § 53a-71,[1] and four counts of risk of injury to a child · in violation of General Statutes § 53-21.[2] The defendant claims that the trial court improperly (1) permitted him to be tried jointly for offenses arising out of two different cases, (2) held that penetration of the vagina of a child with a finger or fingers constituted an act of sexual assault in the second degree, and (3) allowed the admission of certain photographic evidence. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. The defendant and his wife were married in 1973 and separated in 1988. The defendant moved into the

---

[1] General Statutes § 53a-71 provides in pertinent part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

Section 53a-71 was amended by Public Acts 1993, No. 93-340, § 2. Since the defendant was convicted under the prior version of the statute and the amendment does not affect the statutory construction issue on appeal, we deal only with the language of the statute prior to its amendment.

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does an act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

Five counts, two counts under General Statutes § 53a-71 and three counts under § 53-21, involved the victim A, while the remaining two counts, one each under §§ 53a-71 and 53-21 involved the victim T.

house of his mother and stepfather in Waterbury and a visitation schedule was agreed on allowing him to visit with his four children, a son and three daughters. Visitation included overnight stays on weekends at his parents' home.

Around Easter, 1988, the defendant began sexually molesting his daughter A, who was then seven years old. It began by the defendant taking A into his bedroom, alone, and tickling her between her legs while she was clothed. He told her she was all right when she told him to stop and began crying. A couple of weeks later, he called A into his bedroom, took her pants off and started playing with her vagina by putting his fingers inside. After the incident, A refused to go upstairs with the defendant when asked until he began yelling at her. Sometimes, she would resist further by going into the bathroom. The defendant would knock on the door and tell her to come out; when she did, he would take her into the bedroom, shut the door, and put his fingers inside her vagina. When he did this A would cry and tell him to stop and "that she did not like that." The defendant responded that "it was all right; that [she] was his little girl; [and] that he wasn't going to hurt her."

Thereafter, the defendant began inserting his penis inside A's vagina. A would sit on the bed and the defendant would tell her to lie down. When A complied, the defendant took off her pants, took down his own pants, and spread A's legs apart. The child would close her eyes; she knew her father was putting his penis inside her because "it was hard," "it hurt" and "it didn't feel like his fingers anymore." The defendant positioned himself above her, keeping himself up, pushing on the bed so he would not fall on her, and moved his penis back and forth. A could feel the bed move. She cried because it hurt, more than when the defendant put his fingers inside her. The defendant told A she was "a

big girl" and that "everything was going to be all right." After about five minutes, the defendant pulled up his pants and went into the bathroom. A noticed that the bed was a little wet but she did not know why it was wet. After the defendant left the bathroom, A went in and cleaned herself up with a washcloth. Sexual attacks occurred on almost every visit until sometime in August or September, 1988.

On March 4, 1991, A gave a statement to a police officer about the sexual assaults. She had not told anyone about the episodes earlier because she did not want to talk about it and did not want anyone, including her mother, to know. She did not tell her mother because she did not "really think it was really any of her business."

The younger victim, T, testified about two incidents in which the defendant penetrated her vagina using a washcloth while he was bathing her. One of the incidents occurred while T and her siblings were visiting the defendant at his parents' home in Waterbury. T was six years old at the time.[3] On that occasion, the defendant touched her in the vagina with a washcloth. The defendant washed her and she complained that it hurt because he pushed the washcloth in her vagina. She told him that it hurt and the defendant responded that it was okay. T did not think he was just washing her because he pushed the washcloth "really hard."

I

The defendant first claims that the trial court improperly granted the state's motion to consolidate. He argues that combining the two cases, which were extremely detrimental to each other, so prejudiced the

---

[3] T testified to a second, similar incident that took place in Philadelphia. This incident was not at issue in the case since the court instructed the jury that Pennsylvania crimes are not actionable in Connecticut.

jury as to deprive him of his right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.

General Statutes § 54-57[4] and Practice Book § 829[5] permit a defendant to be tried jointly on charges arising from separate cases. "When a defendant stands accused of two or more similar offenses, they may be joined at trial if they are based on related acts that evince a common scheme, intent or motive. *State* v. *Greene,* 209 Conn. 458, 464–65, 551 A.2d 1231 (1988). The question of joinder or severance rests on the sound discretion of the trial court. *State* v. *Boscarino,* 204 Conn. 714, 720, 529 A.2d 1260 (1987); *State* v. *Carpenter,* 19 Conn. App. 48, 62, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). The defendant bears the heavy burden of showing that a denial of severance resulted in substantial injustice beyond the curative power of jury instructions. *State* v. *Herring,* 210 Conn. 78, 95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Whether a joint trial will be substantially prejudicial to the rights of the defendant means something more than that it will be less advantageous to the defendant. *State* v. *Bell,* 188 Conn. 406, 411, 450 A.2d 356 (1982)." *State* v. *Rose,* 29 Conn. App. 421, 429–30, 615 A.2d 1058, cert. denied, 224 Conn. 923, 618 A.2d 529 (1992).

Evidence that the defendant had engaged in sexual activity with one daughter would have been admissi-

---

[4] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[5] Practice Book § 829 provides: "The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

ble in a trial involving the other daughter for purposes of showing a common scheme or plan. See *State* v. *Morowitz,* 200 Conn. 440, 444, 512 A.2d 175 (1986); *State* v. *Hart,* 26 Conn. App. 200, 202–203, 599 A.2d 748 (1991). The incidents were sufficiently similar to demonstrate a pattern of action. See *State* v. *Hart,* supra. "Where evidence of one incident *can* be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." (Emphasis in original.) *State* v. *Pollitt,* 205 Conn. 61, 68, 530 A.2d 155 (1987).

"A trial court will not have manifestly abused its discretion in denying severance if the state's orderly presentation of evidence has prevented confusion of the jury and has enabled the jury to consider the evidence relevant to each charge separately and distinctly." Id. The evidence in this case was presented to the jury in an orderly fashion, distinguishing the acts involving each child in a logical and separate manner. The two cases were presented separately. Each of the seven counts was tendered independently, with separate instructions from the court to the jury as to the elements of each, and an indication as to which child a particular count referred. Our review of the record also discloses that the matters were not so complex,[6] nor so brutal or shocking, in the sense of being inordinately violent or callous,[7] as to have mandated severance.

---

[6] See *State* v. *Boscarino,* 204 Conn. 714, 723, 529 A.2d 1260 (1987) (duration and complexity of trial enhances likelihood that jury would weigh evidence against defendant cumulatively, rather than independently in each case).

[7] See *State* v. *Boscarino,* 204 Conn. 714, 723–24, 529 A.2d 1260 (1987) (holding that trial court improperly consolidated four separate incidents of first degree sexual assault involving use of knife); *State* v. *Silver,* 139 Conn. 234, 240–41, 93 A.2d 154 (1952) ("Substantial injustice might result to a defendant where the evidence of one of the several crimes

The trial court did not manifestly abuse its discretion in granting the state's motion to consolidate; the defendant was not substantially prejudiced by joinder of the offenses for a single trial.

## II

The defendant next claims that the evidence was insufficient to sustain a conviction for sexual assault in the second degree under § 53a-71 because penetration of the vagina with a finger or fingers does not fall within the definitions of sexual intercourse as defined by General Statutes § 53a-65 (2).[8] He argues that a finger cannot be an "object manipulated by an actor."[9] While the defendant concedes that a dictionary definition of "object" may include a finger, he argues that, within the meaning of the statute, the word "manipulated" causes the word "object" to mean something separate and apart from the hand. We do not agree.

charged will show such brutality on his part that it is apt to arouse the passion of the jury against him to such an extent that they probably would not give fair consideration to the evidence relating to the other charges. Such a situation, however, is rare.").

[8] General Statutes § 53a-65 provides in pertinent part: "DEFINITIONS. As used in this part, except section 53a-70b, the following terms have the following meanings:

"(1) 'Actor' means a person accused of sexual assault.

"(2) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. . . ."

[9] We note that only one count, count two of the substitute information, which involved the victim A, alleges penetration of the vagina by "finger or fingers." Count six, involving the victim T, charges penetration with "an object." The evidence presented could reasonably have allowed the jury to find that object to be a washcloth. The defendant does not contest that a washcloth can be an object.

"It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent." *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 194, 567 A.2d 1156 (1989); *Green* v. *Warden,* 178 Conn. 634, 637–38, 425 A.2d 128 (1979). A statute must be applied as its words direct. *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 785 (1975). Words in a statute must be given their plain and ordinary meaning and be interpreted in their natural and usual sense unless the context indicates that a different meaning was intended. *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981).

The defendant urges us to adhere to a strict construction and to adopt a narrow and technical definition of "manipulate" to mean "operate or treat by the hand." In the context of the statute, the phrase "object manipulated by an actor" does not lead us to conclude that because a finger is part of the hand, it cannot be operated or treated by the hand. We do not go beyond the plain words of the statute. Even accepting the definition proposed by the defendant, since "manipulate" is not expressly defined in the penal code, we cannot conclude that an actor cannot manipulate his finger by using his hand.

"Although we recognize the fundamental principle that criminal statutes are to be construed strictly, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent." (Internal quotation marks omitted.) *State* v. *Stevens,* 224 Conn. 730, 736–37, 620 A.2d 789 (1993). "In order to ascertain and give effect to the apparent intent of the legislature, we must examine the language of the statute in light of the purpose that it was designed to achieve. . . ." (Citations omitted.) *Szudora* v. *Fairfield,* 214 Conn. 552, 557, 573 A.2d

1 (1990). A construction that fails to attain a rational and sensible result bearing directly on the purpose the legislature sought to achieve must be avoided. *Jones* v. *Mansfield Training School,* 220 Conn. 721, 726, 601 A.2d 507 (1992). When interpreting a statute, "we will adopt the more reasonable construction over one that is unreasonable." *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991).

The general purpose of the statute in question is to protect children from being sexually violated. The statute proscribes sexual intercourse—the act of penetration, however slight. Thus, the statutory purpose is met regardless of what particular object is used to accomplish that penetration. Further, the statute elsewhere specifically prohibits penetration using other parts of the actor's body. It would be unreasonable to conclude that penetration by an actor's tongue or penis constitutes sexual intercourse, while penetration by a finger does not. Statutes should be construed so as not to reach an absurd or unreasonable result. *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980). The trial court properly concluded that penetration of the child's vagina by the defendant's finger constituted sexual intercourse by an "object manipulated by an actor" for purposes of the statute.

### III

Lastly, the defendant claims that the trial court improperly admitted into evidence photographs of the victim's vagina taken almost three years after the alleged assault.

At trial, the state sought to have admitted into evidence two photographs of A's vagina taken with a colposcope in support of the testimony of a witness, the nurse who examined A at the Child Abuse Diagnostic Clinic at St. Francis Hospital in February and March, 1991. The defendant argued that the evidence was

grossly inflammatory, prejudicial and remote. The court allowed the evidence, having determined that it was relevant and that its probative value far outweighed its prejudicial effect.

"The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." *State* v. *Holliman,* 214 Conn. 38, 50, 570 A.2d 680 (1990). The determination of remoteness, like relevancy, is left to the trial court's broad discretion. *State* v. *Payne,* 219 Conn. 93, 112, 591 A.2d 1246 (1991); *State* v. *Maldonado,* 193 Conn. 350, 365, 478 A.2d 581 (1984). "The trial court also has broad discretion in balancing the probative value of proffered evidence against its prejudicial effect. That discretion is subject to reversal only where an abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Willis,* 221 Conn. 518, 522, 605 A.2d 1359 (1992).

The defendant has assumed a heavy burden in seeking to reverse the exercise of judicial discretion. The purpose of the offer was to demonstrate, through the photographs, the physical indications on the hymen, tending to show penetration. Under the circumstances of this case, the trial court could reasonably have concluded that the effects of vaginal penetration of a seven year old child still present and observable through photographs taken at the age of ten, were relevant to a material fact, highly probative, and not remote. We cannot conclude that the trial court abused its discretion in admitting the photographs.

The judgment is affirmed.

In this opinion the other judges concurred.