STATE OF CONNECTICUT *v.* SCOTT HERMANN
(12328)

HEIMAN, SPEAR and HENNESSY, Js.

Argued January 9—decision released May 23, 1995

*Howard A. Lawrence,* with whom was *Lawrence S. Dressler,* for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,*

state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Scott Hermann, appeals from his conviction, following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), risk of injury to a child in violation of General Statutes § 53-21, and interfering with an officer in violation of General Statutes § 53a-167a. The defendant claims that the trial court improperly (1) denied his motion for judgment of acquittal, (2) denied his motion to sever the trial on interfering with an officer from the trial on sexual assault and risk of injury, (3) failed to declare a mistrial for the state's loss of potentially exculpatory evidence, (4) admitted into evidence a tape-recorded statement of the defendant for both substantive and impeachment purposes, (5) refused to allow the defendant to discredit his brother's testimony by questioning him as to his drug and alcohol use, and (6) failed to exclude evidence of domestic violence. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. In the spring of 1991, the eight year old victim lived with her mother, her older sister, her six year old brother, the defendant, and the defendant's fifteen year old brother. The defendant was the boyfriend of the victim's mother. On the evening of April 15, 1991, the victim's mother and the defendant argued, and the victim's mother told the defendant to leave the house. The defendant left, but returned before the victim's mother left for work. The victim's mother worked from 11 p.m. to 7 a.m. at a nursing home, and the defendant was usually responsible for the care of the children while the victim's mother was at work.

When the victim's mother left for work, the defendant remained in the house with the victim, the victim's six year old brother and the defendant's brother. The

victim fell asleep on the couch while watching television. She was awakened when the defendant removed her clothing and laid on top of her. She told the defendant that she was cold and he dressed her and carried her into her bedroom. After looking in on her several times, the defendant gave the victim something to drink to help her get to sleep. Thereafter, when the victim was drowsy but still awake, the defendant returned to the room, taped the victim's mouth and hands, placed the victim on the bedroom floor and removed her pants and underwear. He placed himself on top of her and put his fingers into her vagina.

The victim's cries awakened her younger brother who came to the bedroom and saw the defendant on the floor on top of his sister. The boy returned to bed after being told to do so by the defendant. The defendant removed the tape from the victim's face and left the house for a few minutes. The victim went into the bathroom, examined herself and found that she was bleeding from the vagina. She then called her mother's place of employment but before the phone was answered she heard the defendant returning. She hung up, went to her bedroom, locked the door and eventually fell asleep. The next morning, when the victim's mother returned home from work, the victim's brother told his mother what he had seen and heard. The victim's mother awakened the victim and, after the victim told her what had happened, called the police.

I

The defendant initially claims that the trial court improperly denied his motion for judgment of acquittal because there was no evidence that he engaged in sexual intercourse with the victim as defined in General Statutes § 53a-65 (2).[1] The relevant portion of

[1] General Statutes § 53a-65 (2) provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between per-

§ 53a-65 (2) provides that "[p]enetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body." The defendant argues that because Webster's Third New International Dictionary. defines manipulate to mean "to treat, work or operate with the hands," and because a finger is a part of a hand, a finger cannot be "an object manipulated by the actor" under § 53a-65 (2). The defendant would have us conclude that digital penetration of a victim's vagina does not constitute sexual intercourse as defined in § 53a-65 (2). We are not persuaded.

Our decision in *State* v. *Grant*, 33 Conn. App. 133, 634 A.2d 1181 (1993), is dispositive of this claim. In *Grant*, we held that "[t]he general purpose of the statute in question[2] is to protect children from being sexually violated. The statute proscribes sexual intercourse—the act of penetration, however slight. Thus, the statutory purpose is met regardless of what particular object is used to accomplish that penetration. Further, the statute elsewhere specifically prohibits penetration using other parts of the actor's body. It would be unreasonable to conclude that penetration by the actor's tongue or penis constitutes sexual intercourse, while penetration by a finger does not. Statutes should be construed so as not to reach an absurd or unreasonable result. *State* v. *Campbell*, 180 Conn. 557, 563, 429 A.2d 960 (1980)." Id., 141. The trial court was correct in denying the defendant's motion for judgment of acquittal.[3]

sons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

[2] Although *Grant* involved a prosecution under General Statutes § 53a-71, not § 53a-70, our holding in *Grant* turned on the definition of sexual intercourse in § 53a-65 (2) and is controlling in this case.

[3] The defendant also claims that the trial court improperly refused to instruct the jury that digital penetration was not proscribed by General

## II

The defendant next claims that the court improperly denied his motion for a separate trial on the charge of interfering with an officer. He argues that the trial court's refusal to sever the interfering charge from the charges of sexual misconduct resulted in substantial injustice and extreme prejudice to him. We disagree.

The following additional facts are necessary to dispose of this claim. The morning after the victim was assaulted, a surgical glove was found in the upper bunk of the bunkbed in the victim's room. Because of her job, the victim's mother had a box of surgical gloves to which the defendant had access. As part of the state's case-in-chief, Detective Paul Hemingway testified that the surgical glove found in the victim's bedroom possibly had been worn by the defendant when he assaulted the victim.

Following his arrest, after being transported to the police station and in the presence of police officers, the defendant reached into his trousers, removed a surgical glove and, despite the efforts of the officers to prevent him from doing so, flushed the glove down the toilet. This conduct by the defendant is the basis for the interfering charge.

The trial court, in accordance with Practice Book § 828,[4] is authorized to order separate trials if the joinder of offenses in a single trial will prejudice the defendant. " 'In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion,

Statutes § 53a-65 (2). The holding in *Grant* is also dispositive of that claim and, therefore, we will not discuss it further.

[4] Practice Book § 828 provides: "If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon his own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require."

which, in the absence of manifest abuse, an appellate court may not disturb. *State* v. *Greene*, 209 Conn. 458, 463, 551 A.2d 1231 (1988).' " *State* v. *Jennings*, 216 Conn. 647, 657, 583 A.2d 915 (1990). The trial court's role is to determine whether severance is required to avoid the risk that, although evidence admitted on one charge might not persuade the jury of the accused's guilt on that charge, the cumulative effect of all the evidence will persuade the jury of the accused's guilt on all the charges. *State* v. *Boscarino*, 204 Conn. 714, 721–22, 529 A.2d 1260 (1987).

The factors to be considered by the trial court in determining whether severance is necessary include: "(1) whether the charges involved discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial." (Internal quotation marks omitted.) *State* v. *Herring*, 210 Conn. 78, 95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." *State* v. *Jennings*, supra, 216 Conn. 658. Applying these factors to the present case, we find that the defendant was not prejudiced by the denial of his motion to sever.

First, the sexual assault and risk of injury counts involve activity between the defendant and an eight year old at the place where both resided. The interfering count involves an altercation between the defendant and police at the police station. The two sets of charges are separate and easily distinguishable. Second, we held in *State* v. *Grant*, supra, 33 Conn. App. 138, that counts involving sexual assault and risk of injury to children are not necessarily so brutal and shocking as to mandate severance, even from charges

of a similar nature, if the jury is properly instructed to consider the counts separately. Third, the six day trial with testimony from eighteen witnesses was not so long or so complex that the charge of interfering could become confused with the sexual assault charges. See *State* v. *Jennings,* supra, 216 Conn. 659–60 (trial of five days with fourteen witnesses not unduly long or complex); *State* v. *Herring,* supra, 210 Conn. 97 (trial of eight days with twenty-three witnesses not unduly long or complex).

We also note that "where evidence of one incident can be admitted at the trial of the other incidents, separate trials would provide the defendant no significant benefit, and under such circumstances he would ordinarily not be substantially prejudiced by joinder." *State* v. *Crosby,* 36 Conn. App. 805, 810, 654 A.2d 371 (1995). The defendant's argument here is that the introduction of evidence concerning the disposal of the glove at the police station, combined with Hemingway's testimony that the glove found in the victim's bedroom was possibly used during the sexual assault, impermissibly caused the jury to connect him with the sexual assault charges and deprived him of a fair trial. Nevertheless, the defendant's destruction of the glove following his arrest was germane to his identity as the perpetrator; see *State* v. *Crosby,* supra, 810–11; and to his consciousness of guilt; see *State* v. *Sivri,* 231 Conn. 115, 130, 646 A.2d 169 (1994); and would have been admissible in the sexual assault prosecution even if the interfering charge had been tried separately. In this situation, we find no prejudice in the trial court's denial of the motion to sever the trial of the interfering charge from the trial on the sexual assault and risk of injury charges.

Moreover, any likelihood of prejudice in the joinder of these offenses for trial was removed by the instructions to the jury. "[A]lthough a curative instruction is

not inevitably sufficient to overcome the prejudicial impact of [inadmissable other crimes] evidence . . . where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Citations omitted; internal quotation marks omitted.) *State* v. *Jennings,* supra, 216 Conn. 660. In this case, any possible prejudice due to the joinder of offenses for trial was unquestionably ameliorated by the trial court's explicit instruction that the jury should consider the offenses separately. We conclude that the court did not abuse its discretion in denying the defendant's motion to sever the sexual assault and interfering charges.

## III

The defendant next claims that the trial court should have dismissed the prosecution in light of the state's failure to preserve potentially exculpatory evidence.[5] The defendant argues that the state's loss of such evidence violated his federal and state constitutional rights to due process pursuant to the holding in *Arizona* v. *Youngblood,* 488 U.S. 51, 55, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). We will not review this claim.

This claim is raised for the first time on appeal. Our review of this claim, therefore, is limited to either plain error review; see Practice Book § 4185;[6] or review pur-

---

[5] The morning after the sexual assault, while the victim was being examined at the hospital emergency room, a long strand of blond hair was found on her buttocks and placed in a sex crimes investigation kit. Forensic tests determined that this hair was not similar to that of the defendant, and the results of these tests were made known to the defendant during discovery. During trial, as the defendant prepared to question his younger brother, who he suggested was the perpetrator of the sexual abuse of the victim, it was discovered that the hair was missing.

[6] Practice Book § 4185 provides in relevant part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court."

suant to the constitutional bypass doctrine of *Evans-Golding*. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant fails, however, to request review of this claim under either of these doctrines.

As this court has previously noted, it is not appropriate to engage in a level of review that is not requested. *Baker* v. *Cordisco*, 37 Conn. App. 515, 522 n.4, 657 A.2d 230 (1995); *State* v. *Carter*, 34 Conn. App. 58, 91–92, 640 A.2d 610, cert. granted on other grounds, 229 Conn. 919, 644 A.2d 915 (1994); *State* v. *Johnson*, 26 Conn. App. 433, 438, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992); but see *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995). Accordingly, we decline to review this unpreserved claim of error.

## IV

The defendant next contends that the trial court improperly allowed into evidence a statement he made to the police at the time of his arrest. The defendant argues that (1) the trial court improperly denied his motion to suppress the statement, (2) the trial court improperly admitted the statement for both substantive and impeachment purposes, and (3) the admission of the statement was error where the state had previously agreed not to seek admission of the statement for any purpose. We find no merit in any of these claims.

## A

The defendant argues that the trial court improperly denied his motion to suppress the tape-recorded statement. He claims his waiver of his *Miranda*[7] rights was not knowing and voluntary because he had not been

---

[7] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

informed that he was being questioned in connection with the sexual assault of the victim. We disagree.

The defendant concedes that he was given his *Miranda* warnings. He argues, however, that he provided a statement to the police only because he believed that he was being questioned about an argument he had had with the victim's mother the previous evening. He bolsters his argument by pointing out that as soon as he was informed that he was being detained in connection with the sexual assault of the victim, he refused to sign a transcription of the tape-recorded statement or to cooperate further in answering questions. The defendant argues that he waived his *Miranda* rights with regard to his argument with the victim's mother but insists that he exercised his rights with regard to the sexual assault allegations. As a result, the defendant contends that the trial court improperly refused to suppress his statement.

The gravamen of this claim is that because the defendant was not informed as to the specific offense with which he was charged, the *Miranda* warnings were rendered a nullity. The flaw in this argument is that there is no requirement that the police inform an arrested person of the specific charges against him or her after they give the arrestee *Miranda* warnings. *Colorado* v. *Spring*, 479 U.S. 564, 577, 107 S. Ct. 851, 95 L. Ed. 2d 954 (1987). Because *Miranda* warnings were given and the defendant does not claim that his statement was coerced in any other way, he cannot prevail on this claim.

### B

The defendant next contends that the trial court improperly allowed his tape-recorded statement into evidence for substantive as well as impeachment purposes. He claims that the reliability criteria given by our Supreme Court in *State* v. *Whelan*, 200 Conn. 743,

513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), as a prerequisite for the admissibility of a prior inconsistent statement for substantive purposes were not present. We disagree.

The following additional facts are relevant to the resolution of this issue. At trial, the state requested to play for the jury the defendant's tape-recorded statement taken at the police station following his arrest. The state claimed that the defendant's testimony at trial was inconsistent with this prior recorded statement. The court allowed the tape-recorded statement to be played and instructed the jury: "The statement that is going to be heard on tape is not necessarily offered for the truth of what is contained therein, but for whatever purpose the jury may see fit insofar as prior testimony is concerned, the testimony of the defendant and others in the course of the trial." Although, as the state points out, this instruction is ambiguous, we find it unnecessary to decide whether the statement was admitted for substantive purposes because, even if it was, such use was permissible under *State* v. *Whelan*, supra, 200 Conn. 743.

A prior inconsistent statement can be used for substantive purposes only if (1) the statement is written and is signed by the declarant, (2) the declarant has personal knowledge of the facts stated, and (3) the declarant testifies at trial and is subject to cross-examination. Id., 753. Although the *Whelan* decision implicated use of a prior written statement, not prior tape-recorded statements, it noted in dicta that prior tape-recorded statements possess indicia of reliability and trustworthiness sufficient to allow their use for substantive purposes even if they are not signed and in writing. Id., 754 n.9. This dicta became controlling law in later cases. See *State* v. *Woodson*, 227 Conn.

1, 21, 629 A.2d 386 (1993); *State* v. *Alvarez*, 216 Conn. 301, 313, 579 A.2d 515 (1990). "Although the general rationale of *Whelan* concerning written statements also applies to tape-recorded statements . . . the requirement that such statements be signed is unnecessary because the recording of the witness' voice imparts the same measure of reliability as a signature." (Citation omitted.) *State* v. *Woodson*, supra, 21.

The defendant does not contest that the tape-recorded statement was based on personal knowledge or that he testified about the statement in court and was subject to both direct and cross-examination. In fact, the defendant explicitly testified that the tape-recorded statement had inaccuracies in it and that these inaccuracies were the reason for specific inconsistencies with his in-court testimony. In these circumstances, we conclude that the tape-recorded statement was properly used for substantive purposes and the jury was properly allowed to determine for itself whether to credit the defendant's trial testimony or his prior inconsistent statement.

## C

The defendant also argues that the court improperly admitted the defendant's tape-recorded statement into evidence where the state had agreed not to seek the admission of the statement. The defendant claims that by allowing the tape to be played to the jury the court displayed favoritism to the state because it allowed the state to renege on a promise made in chambers not to introduce the recorded statement. The record is devoid of any evidence as to what, if any, agreement the state made concerning the admission of the statement. This court will not speculate on what is not in the record. *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 543, 651 A.2d 1302 (1995); *State* v. *Rosedom*, 34 Conn.

App. 141, 145–46, 640 A.2d 634 (1994). Therefore, the defendant cannot prevail upon this claim.[8]

## V

The defendant next argues that the court abused its discretion in not allowing him to impeach his brother's credibility by cross-examining him about alcohol use with a priest in East Haven. The defendant claims the trial court, by sustaining the state's objections to questions on this subject, improperly infringed on his right to present a defense. We disagree.

The following additional facts are relevant to the resolution of this issue. At trial the defendant developed the theory that his fifteen year old brother was the perpetrator of the sexual abuse of the victim. Through both direct and cross-examination, it was revealed that the defendant and other persons had purchased and otherwise supplied drugs and alcohol for his brother. In his cross-examination of his brother, the defendant asked whether a priest in East Haven had ever provided alcohol to him or drank alcoholic beverages with him in the past.[9] The trial court sustained the state's objection to each question.

"A witness may be cross-examined regarding specific acts of misconduct only if they bear a specific significance upon the issue of the witness's veracity. . . . ' "Whether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court." ' " (Citations omitted.) *State* v. *Avis*, 209 Conn. 290, 304, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d

---

[8] For the same reason, we will not address the defendant's argument that the state was guilty of prosecutorial misconduct in its misrepresentations of the promise made in chambers.

[9] The questions were: "Did you ever have occasion to drink in a church at East Haven?" and "[Have you ever been] given any alcoholic beverages by any priest in East Haven?"

937 (1989). Absent a showing of a clear abuse of discretion, we will not reverse the trial court's ruling on such evidentiary matters.

Both the state and the defense elicited ample testimony as to the drinking and drug use of the defendant's brother on the night of the sexual assault of the victim and in general. When the state objected to the two questions at issue, the defendant made no offer of proof as to the relevance of his brother's alleged alcohol use with a priest in East Haven. We conclude that without any claim as to the significance of this issue to the veracity or credibility of the witness, the trial court did not abuse its discretion in prohibiting such a line of questioning.

## VI

The defendant's final argument is that the trial court improperly failed to exclude evidence of domestic violence in the defendant's household. The gravamen of the defendant's argument is that the testimony of a clinical social worker regarding domestic violence in the defendant's household was impermissible because it served to identify the defendant as fitting the profile of a child abuser and child molester. We disagree.

At trial, Craig Newton, codirector of the victimology program at Yale-New Haven Hospital, was called to testify as part of the state's case-in-chief. Newton's professional responsibilities include psychosocial evaluations of victims, and the determination of their safety upon discharge to the home environment. On direct examination, Newton acknowledged that he was not aware of any allegations of physical abuse of the children in the defendant's home. Newton added, however, that "domestic violence is family violence, so the children are always part of the violence." The state also elicited testimony that Newton was aware of possible financial stress in the defendant's household, and New-

ton further commented that financial stress and domestic violence go hand in hand.

The defendant's argument that Newton's statements concerning domestic violence served to identify the defendant as fitting a profile of a child abuser and child molester is not supported by the record. Newton was never qualified as an expert and he never testified that the defendant was a child abuser or molester. The bulk of Newton's testimony, based on his observations of the victim during the interview, tended to corroborate the fact that the victim had in fact been sexually abused and to support his assessment that it might not be safe for the victim to return to the defendant's household. His testimony also served to discredit the testimony of the victim's mother that the victim did not know who had assaulted her, by supporting the inference that the victim's mother's financial concerns might be more pressing than her concern for her daughter's safety from future abuse. We conclude that the trial court did not abuse its discretion in allowing Newton to testify as to domestic violence in the defendant's household.

The judgment is affirmed.

In this opinion the other judges concurred.