******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DEYKEVIOUS RUSSAW
(AC 43084)

Alvord, Prescott and DiPentima, Js.

*Syllabus*

Convicted of the crimes of manslaughter in the second degree and evading responsibility in connection with an incident in which he struck two pedestrians while operating a stolen vehicle and then fleeing the scene, the defendant appealed to this court. One of the pedestrians died as a result of her injuries. The day after the incident, the police brought the defendant to the Hartford Police Department, placed him in an interview room, and advised him of his rights under *Miranda* v. *Arizona* (384 U.S. 436). The defendant signed a form waiving these rights. The police then questioned the defendant about an unrelated shooting until he requested a lawyer. The police ceased their questioning and processed the defendant, informing him that he was being booked for murder. After hearing this, the defendant told the police that he was willing to continue speaking to them without the presence of an attorney. The police again advised the defendant of his *Miranda* rights and he signed another form waiving the same. The police then resumed questioning the defendant regarding the shooting, before switching topics to discuss the motor vehicle incident. The police did not readvise the defendant of his *Miranda* rights prior to discussing the motor vehicle incident. During the interrogation, the defendant admitted that he was the operator of the vehicle that struck the two pedestrians and he signed a written statement to that effect. Prior to trial, the defendant filed a motion to suppress his statements made during the interrogation, which the trial court denied. On appeal, the defendant claims that the trial court erred in denying the motion to suppress because his statements were obtained in violation of his constitutional rights under *Miranda. Held*:

1. The trial court did not err in denying the defendant's motion to suppress his statements:

   a. The defendant's claim that the police were required to administer a new set of *Miranda* warnings prior to questioning him about the motor vehicle incident was unavailing because the entirety of the questioning comprised one continuous interview and *Miranda* rights are not offense specific: the defendant was advised of and waived his *Miranda* rights twice, prior to any questioning relating to the motor vehicle incident and prior to making any inculpatory statements; moreover, the questioning regarding the shooting and the questioning regarding the motor vehicle incident were separated by a period of only approximately fifteen minutes and the police told the defendant at the outset of the interview that they wanted to discuss multiple matters with him; furthermore, *Miranda* warnings are broad and explicit and, as such, the police were not required to readminister the warnings prior to asking the defendant questions about a new incident during the same interview.

   b. The defendant's claim that the waiver of his *Miranda* rights was involuntary is unavailing: the defendant was advised of his rights two separate times during the interview and his waivers of those rights were not the result of any pressure applied by the police, as they were made prior to the making of any inculpatory statements; moreover, the defendant was aware that the motor vehicle incident was a possible subject of the interrogation and he expressed a willingness to speak with the police regarding the matter.

2. Even if the trial court had erred in denying the defendant's motion to suppress and in admitting his statements into evidence, the defendant could not have prevailed on his claim because the error would have been harmless: the state produced ample evidence, independent of his statements, from which the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt, including a video of the incident and the testimony of a coparticipant.

Argued November 10, 2020—officially released March 9, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of larceny in the second degree, manslaughter in the second degree and two counts of evading responsibility, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Solomon, J.*; verdict and judgment of guilty of manslaughter in the second degree and one count of evading responsibility, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, executive assistant state's attorney, and *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Deykevious Russaw, appeals from the judgment of conviction, rendered after a jury trial, of one count of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1) and one count of evading responsibility in violation of General Statutes § 14-224 (b) (1). The defendant claims on appeal that the trial court erred by denying his motion to suppress his statements made to the police, which he alleges were obtained in violation of his constitutional rights under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our discussion. On July 18, 2017, Rosella Shuler and Shavoka Ceasar were standing near the corner of Ashley Street and Sigourney Street in Hartford. While operating a stolen Toyota Highlander, the defendant struck Shuler and Ceasar. When the vehicle came to a rest after crashing into a fence, the defendant and five other individuals exited the vehicle and fled the scene. Shuler and Ceasar were transported to Saint Francis Hospital and Medical Center, where Shuler later succumbed to complications from her injuries.

On July 19, 2017, the defendant was brought to the Hartford Police Department and questioned about the motor vehicle incident and an unrelated, fatal shooting. The police questioned the defendant about the shooting first and then discussed the motor vehicle incident. Although the defendant initially denied being the operator of the vehicle that struck Shuler and Ceasar, he eventually admitted that he was the driver and signed a written statement to that effect. The interrogation ended at approximately 1 a.m. on July 20, 2017.

The defendant was charged by way of a substitute long form information with one count of larceny in the second degree in violation of General Statutes § 53a-123 (a) (1), one count of manslaughter in the second degree in violation of § 53a-56 (a) (1), one count of evading responsibility in violation of § 14-224 (b) (1), and one count of evading responsibility in violation of § 14-224 (b) (2). The defendant pleaded not guilty and elected to be tried by a jury. On January 24, 2019, the defendant moved to suppress the statements he made to the police during the July 19 and 20, 2017 interview about the motor vehicle incident.

The trial court held a hearing on the motion on February 4, 2019. At the hearing, Detective Anthony Rykowski of the Hartford Police Department, the lead investigator of the shooting incident, testified regarding the sequence of events surrounding the defendant's interview, and the state introduced into evidence several exhibits, including a video recording of the entire inter-

rogation and signed *Miranda* waiver and parental consent forms. The court denied the motion to suppress in an oral ruling on February 13, 2019. Trial began on February 14, 2019. The state entered into evidence and read to the jury the defendant's written statement provided to the police, in which he confessed to driving the vehicle that struck Shuler and Ceasar. On February 20, 2019, the jury found the defendant guilty of manslaughter in the second degree and of evading responsibility. The jury found the defendant not guilty of the remaining two charges. On April 24, 2019, the court sentenced the defendant to a total effective sentence of sixteen years of incarceration. This appeal followed.

On appeal, the defendant contends that the trial court erred in denying his motion to suppress his July 19 and 20, 2017 statements to the police. Specifically, the defendant argues that his statements regarding the motor vehicle incident were obtained in violation of his *Miranda* rights.[1] In the defendant's view, the interrogation regarding the motor vehicle incident was a new and separate interview from the one regarding the unrelated shooting, such that the police were required to give him a new *Miranda* advisement before questioning him about the motor vehicle incident. In response, the state argues that the police were not required to administer a new set of *Miranda* warnings after obtaining the defendant's statement about the shooting and prior to "switch[ing] gears" and interrogating him about the motor vehicle incident. The state further argues that, even if the court erred in admitting the defendant's statements, such admission was harmless. We agree with the state that new *Miranda* warnings were not required before questioning the defendant about the motor vehicle incident.

In its oral ruling denying the motion to suppress, the court found the following facts, which the defendant does not challenge in this appeal. On July 19, 2017, the defendant and his father were brought to the Hartford Police Department and were placed in an interview room.[2] At approximately 3 p.m., the defendant was advised of his *Miranda* rights, and he signed a form waiving his rights. The defendant's father was present while the defendant was being advised of his rights, and he signed a parental consent form, which allowed the police to speak with the defendant.[3]

Detective Rykowski then proceeded to interview the defendant with Detective Jeffrey Pethigal. The defendant indicated a willingness to speak with the detectives, and Detective Rykowski informed him that he would be under arrest for murder.[4] The defendant first was questioned about the shooting until 4:28 p.m. At that time, the defendant requested the presence of an attorney. The detectives ceased questioning the defendant. At 5:05 p.m., a detective entered the interview room where the defendant was being held to process

him. When the defendant was informed that he was being booked for murder, he became upset and expressed a desire to continue speaking with the detectives. After the defendant was processed, he was brought back into the interview room, and he told Detective Rykowski that he was willing to speak with him without an attorney. Detective Rykowski read the defendant his *Miranda* rights again, and the defendant and his father reviewed and signed another set of rights waiver forms.

The police continued questioning the defendant following his second waiver of his *Miranda* rights. The bulk of the conversation centered on the shooting. The defendant eventually provided a written statement regarding the shooting, which he completed at 11:20 p.m. At 11:37 p.m., Detective Rykowski and Detective Candace Hendrix entered the interview room where the defendant was being held and indicated to the defendant that they were going to "totally switch gears here" and speak with him about "something else." The detectives asked the defendant where he had been and what he had done the previous day, and the defendant responded that he had seen a car accident. The detectives informed the defendant that the car accident was the matter that they wanted to discuss, and they began questioning him about the incident. Prior to questioning the defendant regarding the motor vehicle incident, Detective Rykowski did not readvise the defendant of his *Miranda* rights. Although the defendant initially denied any culpability, he later changed his statement and admitted to being the operator of the vehicle. He then provided a signed, written statement concerning his involvement in the motor vehicle incident. The interrogation relating to the incident concluded at approximately 1 a.m. on July 20, 2017.

On February 13, 2019, the court issued an oral ruling on the motion to suppress. In its oral ruling, the court noted that it had derived its findings of fact largely from the video of the interrogation. After the court made its findings of fact, it concluded that the state had met its burden of proving that the defendant had knowingly, intelligently, and voluntarily waived his *Miranda* rights. It then turned to the issue on appeal, namely, whether the police were required to again advise the defendant of his *Miranda* rights prior to questioning him about the motor vehicle incident. Citing *Colorado* v. *Spring*, 479 U.S. 564, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987), and *State* v. *Hermann*, 38 Conn. App. 56, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995), the court concluded that Detective Rykowski was not required to advise the defendant of his *Miranda* rights before questioning him about the motor vehicle incident because a defendant's awareness of all possible topics of questioning in advance of an interrogation is not relevant to whether the defendant knowingly, intelligently, and voluntarily waived his rights. Accordingly,

the court denied the defendant's motion to suppress.

"Under our well established standard of review in connection with a motion to suppress, we will not disturb a trial court's finding of fact unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 191 Conn. App. 191, 195, 213 A.3d 1166 (2019).

"[T]he [f]ifth [a]mendment privilege [against self-incrimination] is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." (Internal quotation marks omitted.) *State* v. *Spence*, 165 Conn. App. 110, 116, 138 A.3d 1048 (quoting *Miranda* v. *Arizona*, supra, 384 U.S. 467), cert. denied, 321 Conn. 927, 138 A.3d 287 (2016). Accordingly, "[i]t is well established that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Internal quotation marks omitted.) *State* v. *Sumler*, 199 Conn. App. 187, 206, 235 A.3d 576 (2020).

In the present case, it is undisputed that the police read the defendant his *Miranda* rights and that he signed a *Miranda* rights waiver form twice. Moreover, during oral argument before this court, the defendant's counsel stated that he was not challenging the legality of these *Miranda* warnings or the legality of the portion of the interview concerning the shooting. What the defendant does claim is that his *Miranda* rights were violated because the portion of the interview concerning the motor vehicle incident was a separate interview and that, as such, the police were required to administer a new set of *Miranda* warnings prior to questioning him about the incident and failed to do so. In the defendant's view, his constitutional rights were violated because *Miranda* rights are offense specific. We disagree.

The interview concerning the motor vehicle incident was not a separate interview. The United States Supreme Court has held that two periods of questioning with only a short period of time between sessions may be viewed as one continuous interview. See *Missouri* v. *Seibert*, 542 U.S. 600, 616–17, 124 S. Ct. 2601, 159 L.

Ed. 2d 643 (2004) (two phases of questioning spaced fifteen to twenty minutes apart reasonably could be regarded as part of continuum); *Miranda* v. *Arizona*, supra, 384 U.S. 494–96 (defendant Carl Calvin Westover underwent continuous period of questioning when Federal Bureau of Investigation (FBI) commenced questioning shortly after local police had questioned defendant about separate matter).[5] Here, the defendant completed his statement regarding the shooting at 11:20 p.m., and the police resumed questioning him approximately fifteen minutes later. The short time between sessions was within the time that the United States Supreme Court has held as comprising one continuous interview. See *Missouri* v. *Seibert*, supra, 616–17; *Miranda* v. *Arizona*, supra, 494–96.

Moreover, at the outset of the interview, the detectives had informed the defendant that they had a "lot to talk about" and that the shooting was only one of the subjects they wanted to discuss with him. The defendant was thus on notice that several topics might come up during the interview. The defendant himself even suspected that the detectives would question him about the motor vehicle incident. While he was alone with his father in the interview room, the defendant, on two occasions, surmised to his father that he might have been brought in because of the motor vehicle incident. Specifically, the defendant told his father that the police were probably going to ask him about the car accident and that he thought the interview "was something about that car." In light of these considerations and the holdings of *Seibert* and *Miranda*, we conclude that the questioning regarding the motor vehicle incident comprised one continuous interview with the questioning regarding the shooting.

Having determined that the police questioned the defendant about the shooting and the motor vehicle incident during one continuous interview, we turn to the issue of whether the police were required to administer a new set of *Miranda* warnings prior to questioning the defendant about the motor vehicle incident because it was a separate offense from the shooting. In *Colorado* v. *Spring*, supra, 479 U.S. 577, the United States Supreme Court held that "*Miranda* specifically required that the police inform a criminal suspect that he has the right to remain silent and that *anything* he says may be used against him. There is no qualification of this broad and explicit warning. The warning, as formulated in *Miranda*, conveys to a suspect the nature of his constitutional privilege and the consequences of abandoning it. Accordingly, we hold that a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his [f]ifth [a]mendment privilege." (Emphasis in original.)

This court reached a similar conclusion in *State* v. *Hermann*, supra, 38 Conn. App. 66. In *Hermann*, the defendant moved to suppress his tape-recorded statement. Id., 65–66. He claimed that his waiver of *Miranda* rights was not knowing and voluntary because he had not been informed that he would be questioned about a sexual assault and believed that he was being questioned only about an argument he had had with the victim's mother. Id. We rejected his claim, citing *Spring*, on the ground that "there is no requirement that the police inform an arrested person of the specific charges against him or her after they give the arrestee *Miranda* warnings." Id., 66.

Pursuant to *Spring* and *Hermann*, we conclude that the police were not required to readminister *Miranda* warnings to the defendant prior to questioning him about the motor vehicle incident. As articulated in *Spring*, a *Miranda* warning is broad and explicit, in that it advises a criminal suspect that *anything* he says may be used against him. *Colorado* v. *Spring*, supra, 479 U.S. 577. *Spring* and *Hermann* also expressly hold that the police are not required to inform a suspect about all possible subjects of interrogation or of the specific charges against him. *Colorado* v. *Spring*, supra, 577; *State* v. *Hermann*, supra, 38 Conn. App. 66. *Spring* and *Hermann*, therefore, implicitly recognize that the police do not need to readvise a suspect of his or her *Miranda* rights prior to asking questions on a different topic during a single interrogation in order for a suspect's waiver of rights to be voluntary, knowing, and intelligent.

In the present case, the defendant received *Miranda* warnings twice. He thus was notified of the nature of his constitutional privilege and chose to waive his rights twice despite expressly being told of the potential consequences. See *Colorado* v. *Spring*, supra, 479 U.S. 577. Moreover, although *Spring* and *Hermann* do not require the police to inform a suspect about the possible subjects of interrogation or of the specific charges against him, the record indicates that, here, the defendant *was* aware that his involvement in the motor vehicle incident was a possible subject of interrogation. The police had informed the defendant that there were a few subjects that they wanted to discuss with him,[6] and the defendant himself even suggested to his father that he might have been brought in because of the motor vehicle incident. When the defendant told Detectives Rykowski and Hendrix that he had witnessed a motor vehicle accident, the detectives immediately informed the defendant that this was the incident that they wanted to discuss with him. It was thus readily apparent to the defendant that the motor vehicle incident was a possible subject of interrogation throughout the interview. Pursuant to *Spring* and *Hermann*, we therefore conclude that the police were not required to readvise

the defendant of his *Miranda* rights prior to questioning him about the motor vehicle incident. *Colorado* v. *Spring*, supra, 577; *State* v. *Hermann*, supra, 38 Conn. App. 66.

In the defendant's attempt to circumvent the holdings of *Spring* and *Hermann*, he cites authority that is markedly distinguishable from this case. The defendant first claims that *Miranda* v. *Arizona*, supra, 384 U.S. 494–97, stands for the proposition that he should have been advised of his rights again before being interrogated about the motor vehicle incident. We disagree.

In *Miranda*, the FBI began interrogating the defendant Westover about his involvement in two robberies shortly after the local police had questioned him about an unrelated matter. Id., 494–95. Although the FBI agents advised Westover of his constitutional rights at the outset of their interview, there was no evidence that the local police had advised Westover of his rights or procured a waiver of those rights at any point during their interrogation. Id., 495–96. Westover confessed to the FBI and was convicted of the robberies that were the subject of that interrogation. Id., 495. The United States Supreme Court reversed the conviction, concluding that, "[a]lthough the two law enforcement authorities [were] legally distinct and the crimes for which they interrogated [Westover] were different, the impact on him was that of a continuous period of questioning." Id., 496. Although the FBI agents gave Westover warnings at the beginning of their interview, the United States Supreme Court concluded that, from Westover's point of view, these warnings came at the end of the interrogation process. Id. Accordingly, the Supreme Court concluded that the FBI was the beneficiary of the pressure applied by the local police and that, "[i]n these circumstances, the giving of warnings alone was not sufficient to protect the privilege." Id., 497.

The concerns that the United States Supreme Court had about Westover's interrogation in *Miranda* are not present here. In the present case, the defendant was advised of his *Miranda* rights prior to *any* questioning at the outset of one continuous interview rather than toward the end of an interview as in *Miranda*. Because the defendant received his *Miranda* warnings before any questioning began and prior to making any inculpatory statements, unlike in *Miranda*, he was able to make a voluntary and intelligent waiver of his rights that was not the result of any pressure applied by the police.

Next, the defendant claims that *Michigan* v. *Mosley*, 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975), supports his proposition that he was constitutionally entitled to receive additional *Miranda* warnings. In *Mosley*, the defendant was arrested in connection with multiple robberies. Id., 97. He was brought to the police department for questioning, where he was advised of his *Miranda* rights and signed a certificate acknowledging

those rights. Id. Shortly after the interview commenced, the defendant indicated that he did not want to answer any questions about the robberies. Id. More than two hours later, a different officer from a different bureau of the police department brought the defendant to another interview location to question him about a homicide. Id., 97–98, 104. The second officer advised the defendant of his rights once again and did not ask him any questions about the robberies. Id., 98. During the second interview, the defendant made a statement implicating himself in the homicide, and he was eventually convicted of murder. Id., 98–99. The United States Supreme Court upheld the admissibility of the statement the defendant made regarding the homicide because his right to cut off questioning concerning the robberies was scrupulously honored and the defendant was given another set of full and complete *Miranda* warnings at the outset of the second interrogation. Id., 104–106.

*Mosley* is distinguishable from and inapplicable to the present case. In *Mosley*, the defendant had been subjected to two interviews separated by time and location. As previously observed in this opinion, the defendant here underwent one continuous interview during which he received and waived his *Miranda* rights twice. The defendant's reliance on *Mosley* is thus misplaced.[7]

For the foregoing reasons, we conclude that the defendant was not entitled to receive additional *Miranda* warnings prior to being questioned about the motor vehicle incident. Accordingly, the trial court did not err in denying the defendant's motion to suppress.

The defendant argues in the alternative that his waiver was involuntary as to the motor vehicle incident. We disagree.

"[T]he use of an involuntary confession in a criminal trial is a violation of due process. . . . The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence. . . . [T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . ." (Internal quotation marks omitted.) *State* v. *Donald*, 325 Conn. 346, 358, 157 A.3d 1134 (2017). "Furthermore, the scope of review is plenary on the ultimate question of voluntariness, but the trial court's findings regarding the circumstances surrounding the defendant's questioning and confession are findings of fact that will not be overturned unless they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Martinez*, 171 Conn. App. 702, 757, 158 A.3d 373, cert. denied, 325 Conn. 925, 160 A.3d 1067 (2017).

The defendant claims that his waiver was involuntary because he received no new warnings and signed no

new waivers, the police benefitted from the pressure from the hours long interrogation regarding the shooting, he had no indication that the police wanted to speak with him about the motor vehicle incident until approximately 11:30 p.m., and he did not express a willingness to speak about the incident. None of these claims is persuasive. First, we have already determined that the police were not required to administer a new set of *Miranda* warnings prior to questioning the defendant about the incident because those questions were part of a single, continuous interview for which he had already received two separate warnings. Because he was advised of his rights prior to making any inculpatory statements, the defendant was able to make a voluntary and intelligent waiver of his rights that was not the result of any pressure applied by the police. See *Miranda* v. *Arizona*, supra, 384 U.S. 494–97. Second, contrary to the defendant's contention, he was aware that the motor vehicle incident was a possible subject of interrogation prior to 11:30 p.m. During the interrogation, the police indicated that they wanted to discuss a few subjects with him and, while he and his father were alone in the interview room, the defendant told his father on two occasions prior to 11:30 p.m. that he might have been brought in because of the incident. Finally, the defendant expressed a willingness to speak with the police about the incident. The defendant, in fact, mentioned that he had witnessed a car accident without any prompting when Detectives Rykowski and Hendrix reentered the room and told him that they wanted to switch gears. When he mentioned the motor vehicle incident, the detectives immediately told him that this was the matter that they wanted to discuss with him. After they began interrogating the defendant about the motor vehicle incident, he did not, at any point, indicate that he did not want to speak any further about it. Accordingly, the totality of the circumstances surrounding the defendant's interview and statement demonstrates that he made a knowing, voluntary, and intelligent waiver of his *Miranda* rights.

Even if we were to assume that the court erred in denying the defendant's motion to suppress and admitting his July 19 and 20, 2017 statements into evidence, their admission was harmless. "If statements taken in violation of *Miranda* are admitted into evidence during a trial, their admission must be reviewed in light of the harmless error doctrine." (Internal quotation marks omitted.) *State* v. *Mangual*, 311 Conn. 182, 214, 85 A.3d 627 (2014). "The improper admission of a confession is harmless error where it can be said beyond a reasonable doubt that the confession did not contribute to the conviction. . . . [Our Supreme Court] has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Richard-*

*son*, 66 Conn. App. 724, 735, 785 A.2d 1209 (2001). "When an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . [W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]." (Internal quotation marks omitted.) *State* v. *Mangual*, supra, 214–15.

Here, the state produced ample evidence independent of the defendant's statements from which the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt. The entire motor vehicle incident was captured on video recordings, which were shown to the jury during trial. The videos, in addition to showing footage of the incident itself, also contained footage of the individuals in the vehicle fleeing the scene. Moreover, Teddy Simpson, a coparticipant, testified during trial that the defendant was driving the vehicle when the incident occurred. Although the defendant argues that Simpson's testimony was compromised because he received a reduced sentence for a separate matter in return for his testimony, these facts were presented to the jury, and it would be well within the jury's province to find Simpson's testimony credible despite his cooperation agreement with the state. See *State* v. *Michael T.*, 194 Conn. App. 598, 621, 222 A.3d 105 (2019) ("[i]t is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses" (internal quotation marks omitted)), cert. denied, 335 Conn. 982, 242 A.3d 104 (2020). Accordingly, even if we were to assume that the court erred in admitting the defendant's July 19 and 20, 2017 statements into evidence, we conclude that any such error was rendered harmless beyond a reasonable doubt due to the overwhelming independent evidence of the defendant's guilt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Pursuant to *Miranda* v. *Arizona*, supra, 384 U.S. 444, prior to a custodial interrogation a criminal suspect must "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

[2] We briefly set forth the timeline of events preceding the defendant's interview. The police received a tip that a possible suspect from the motor vehicle incident lived at 188 Sigourney Street. The police followed up on that tip, encountered the defendant and his father, and requested that the defendant accompany them to the police station for questioning about the incident. While the police were transporting the defendant and his father to the Hartford Police Department, Detective Rykowski was obtaining an arrest warrant for the defendant for the shooting and was unaware that the defendant already was being transported to the station. Detective Rykowski happened on the defendant and his father when they arrived at the station. As a consequence, although the police initially brought the defendant to the station to question him about the motor vehicle incident, they questioned

him first about the shooting.

[3] The defendant's father was present while the defendant was being advised of his rights because, even though the defendant had turned eighteen years old on July 18, 2017, Detective Rykowski thought it would be safer to advise the defendant as a juvenile.

[4] Detective Rykowski also told the defendant at the outset of the interview that they had a "lot to talk about." The defendant later acknowledged that an officer had told him that there were a "couple things" that the police wanted to discuss with him. Detective Rykowski confirmed this and mentioned that the shooting was one of those topics.

[5] Westover's appeal was decided in the same opinion as *Miranda* v. *Arizona*, supra, 384 U.S. 436.

[6] In addition to informing the defendant at the outset of the interview that there were a few things that they wanted to discuss with him, the police also reminded the defendant of this after they had finished questioning him about the shooting. Specifically, the police told the defendant that "we'd like to continue talking if you don't mind" because "there's a few other things we want to talk to you quick about."

[7] The defendant also cites *Texas* v. *Cobb*, 532 U.S. 162, 121 S. Ct. 1335, 149 L. Ed. 2d 321 (2001), without analysis, to support his claim that the police were required to advise him of his *Miranda* rights prior to questioning him about the motor vehicle incident. The defendant cites *Cobb* for the proposition that *Miranda* rights, specifically as to counsel, are offense specific. *Cobb*, however, examined the sixth amendment right to counsel rather than the fifth amendment right to counsel. Id., 167. Accordingly, *Cobb* is inapplicable.